[No. 30578.   Department One.   November 8, 1948.]

*In the Matter of the Estate of* MARTHA J. KNIGHT,
*Deceased.*[1]

[1]Reported in 199 P. (2d) 89.

*Allen, Hilen, Froude & DeGarmo*, for appellant.

*The Attorney General* and *Philip W. Richardson, Assistant*, for respondent.

STEINERT, J.—This proceeding arose upon exceptions taken by the executor of a decedent's estate to findings made by the supervisor of the inheritance tax and escheat division, wherein the supervisor determined that the cash surrender value of certain life insurance policies constituted community property and that one half of such cash surrender value should, for inheritance tax purposes, be included in the estate of the deceased beneficiary named in the policies. A hearing was had before the court upon the exceptions taken by the executor, and thereafter the court entered judgment approving and confirming the supervisor's findings fixing the amount of inheritance tax due. The executor appealed.

The facts in the case are undisputed. Martha J. Knight, a resident of Mount Vernon, Washington, died testate on June 3, 1945, leaving as her survivors her husband, P. F. Knight, and three sons. In her will, she appointed her husband as executor thereof. The will was duly admitted to probate, and, upon the confirmation of his appointment, the executor duly qualified as such. Thereafter, the executor proceeded to administer upon the estate of his deceased wife. He prepared and filed an inventory and appraisement of the estate, and served a copy thereof upon the inheritance tax and escheat division of the Washington

state tax commission. Later, he prepared and submitted to the tax division an inheritance tax report and paid the state the sum of $10,796.30, which was the amount computed and transmitted by him as being due under that report.

Sometime after receiving the inheritance tax report and the amount of tax paid thereunder, the supervisor of the inheritance tax and escheat division made and filed in the probate cause his findings, wherein he determined that, in addition to the amount already paid, there was due and owing from the estate a balance of $1,163.14.

This claim for additional inheritance tax was based upon information, contained in the executor's inheritance tax report, concerning the existence of certain life insurance policies and the cash surrender value thereof.

It appears that during the married life of P. F. Knight, the executor and appellant herein, and Martha J. Knight, now deceased, Mr. Knight took out seven policies of insurance *on his own life*, naming his wife as beneficiary in each of them. All premiums thereon were paid entirely from community funds, down to the date of Mrs. Knight's death, and on that date the policies were in full force, having a total cash surrender value of $25,847.60. These facts were revealed by the executor in his inheritance tax report, although, in making his computation of the amount of inheritance tax due and owing from the estate, he did not include this item of cash surrender value of the policies, nor did he pay any inheritance tax on the admitted amount of the cash surrender value.

Upon the information thus furnished by the inheritance tax report, the supervisor made findings determining that an additional inheritance tax was due, on the theory that the cash surrender value of the policies was properly to be considered as part of the gross community estate. The effect of this was to subject one half of the cash surrender value of the insurance policies to an inheritance tax imposed against the estate of the deceased beneficiary. The executor took formal exceptions to these findings, and, upon a hearing before the superior court, judgment was entered

as hereinbefore stated, from which the executor appealed.

The question now presented for decision is this: Where a husband procures a policy of insurance upon his own life, making his wife the beneficiary therein, and all premiums on the policy are paid with community funds, and the wife subsequently dies, leaving her husband, the insured, surviving her, and at the time of her death the policy is still in force, may the state, for inheritance tax purposes, include any portion of the cash surrender value of the policy as part of the estate of the deceased wife, the beneficiary named in the policy, and thereby subject such cash surrender value to an inheritance tax levied against the deceased wife's estate?

For a better understanding of the problem here involved, we think it well, at this point, to define some of the terms used in the foregoing question.

■ "Insurance," in its general sense, may be defined as an agreement by which one person, for a consideration, promises to pay money or its equivalent, or to perform some act of value, to or for the benefit of another person, upon the destruction, death, loss, or injury of someone or something as the result of specified perils. 29 Am. Jur. 47, Insurance, § 3; 44 C. J. S. 471, Insurance, § 1; 1 Joyce, Law of Insurance 73, § 2. In § .01.04, p. 189, of the present insurance code of the state of Washington, Laws of 1947, chapter 79, p. 189, "insurance" is defined as a *contract* whereby one undertakes to indemnify or pay a specified amount to another upon determinable contingencies.

■ "Life insurance" is defined generally as a *contract* wherein a person called the insurer, for a certain sum of money, agrees that, if another person, named in the insurance policy as the insured, shall die within the period limited therein, the insurer will pay the sum specified in the contract, according to the terms thereof, to the person designated in the policy as the beneficiary. 1 Couch, Cyclopedia of Insurance Law, 49, § 34; 44 C. J. S. 484, Insurance, § 25.

■ The term "cash surrender value" means the cash value, ascertainable by established rules, of a contract of

insurance which has been abandoned and given up for cancellation to the insurer by the person having *contract right* to do so. *In re Welling*, 113 Fed. 189, 51 C. C. A. 151.

■ An "inheritance tax" is a special tax, being an excise or impost laid upon the privilege of receiving property by inheritance; it is a tax on the right or privilege of succession. *In re Fotheringham's Estate*, 183 Wash. 579, 49 P. (2d) 480; *Walla Walla v. State*, 197 Wash. 357, 85 P. (2d) 676, 119 A. L. R. 1327.

It will be borne in mind that these policies of insurance were not upon the life of Martha J. Knight, who is now deceased, but upon the life of P. F. Knight, who is still living; that the policies became payable to Martha J. Knight only upon the death of P. F. Knight; and that, under the terms of the policies, nothing was to become due or payable to P. F. Knight upon the death of Martha J. Knight.

■ An inheritance tax, like any other tax, is a legal imposition exclusively of statutory origin, and, consequently, any liability for payment thereof must be found in the statute, or else it does not exist. *Bente v. Bugbee*, 103 N. J. L. 608, 137 Atl. 552, 58 A. L. R. 1137.

The statute which designates the kind or classes of property subject to inheritance tax is § 1, p. 534, chapter 184, Laws of 1945 (Rem. Supp. 1945, § 11201), the applicable portion of which reads as follows:

"*All property* within the jurisdiction of this state, and any interest therein, whether belonging to the inhabitants of this state or not, and whether tangible or intangible, *which shall pass* [1] *by will* or [2] *by the statutes of inheritance* of this or any other state or [3] by deed, grant, sale or gift made in contemplation of the death of the grantor, or donor, or [4] by deed, grant or sale or gift made or intended to take effect in possession or in enjoyment after death of the grantor or donor, to any person in trust or otherwise, or [5] by a transfer in trust or otherwise, under which the grantor or donor has retained for his life or for any period not ascertainable without reference to his death, or for any period which does not in fact end before his death, the possession or enjoyment of any part of the property . . . shall, for the use of the state, be subject to a tax measured by the full value of the entire

property. . . ." (Italics and Arabic numerals appearing in this quotation have been added.)

It is apparent, as well as conceded, that the property here sought to be taxed does not fall within any of the classes designated above by the Arabic numerals 3, 4, and 5; for no deed, grant, sale, or gift made in contemplation of death or intended to take effect after death, or transfer in trust for the grantor is here involved. The inquiry therefore narrows itself to the question whether the cash surrender value of the insurance policies here involved is property which passes either (1) by will or (2) by the statutes of inheritance.

No case from this jurisdiction has been brought to our attention which specifically answers the question presented. However, the case of *In re Killien's Estate*, 178 Wash. 335, 35 P. (2d) 11, is, in our opinion, close enough in point of fact and legal pronouncement to serve as authority upon the question whether the thing or interest which has been subjected to tax in the case at bar is property *which passed either by will or by the statutes of inheritance.*

In the cited case, the facts were: One Frank Killien obtained two policies of insurance upon his own life, each payable, in the event of his death, to his wife. Each of the policies contained a provision reserving to the insured the right to change the beneficiary. Some years thereafter, the insured did change the beneficiary by making the policies payable to a trust company. On the same date, the insured entered into a trust agreement with the beneficiary trust company, under the terms of which the trust company obligated itself, on the death of the insured, to collect the proceeds of the policies, invest them in the manner provided for, and pay out the receipts and accumulations to the insured's children, at the times and in the manner prescribed in the written instrument. In this agreement, the insured again reserved the right to change the beneficiary, and to receive the dividends upon the policies or to surrender the insurance for its cash value. The insured died leaving a will in which the trust company was nominated

the executor thereof. The amount of the two insurance policies was subsequently paid to the trust company as executor, which then filed a petition in the probate cause praying that the proceeds of the policies be adjudged exempt from inheritance tax. The prayer was granted, and the supervisor of the inheritance tax and escheat division appealed.

This court analyzed the statute then applicable, being Rem. Rev. Stat., § 11201 [P.P.C. § 974-1], which was virtually the same in form (except that it included only the first four classes of taxable transfers as heretofore enumerated) and exactly the same in effect,. as Rem. Supp. 1945, § 11201, quoted above; and, upon the basis of its analysis, this court stated:

"The right of the beneficiaries of life insurance policies to receive the proceeds thereof arises *under the contract of insurance, and does not spring from the death of the testator.* The date of death is the time fixed when the insurer becomes obligated to pay." (Italics ours.)

In amplification of the statement just quoted, this court proceeded further to say:

"The first two clauses [1 and 2 above] of the statute (Rem. Rev. Stat., § 11201) imposing the tax on property which shall pass by will or by the statute of inheritance, clearly manifest the purpose to tax only that which would, in the normal course of events, *pass by will or by the statute of inheritance.* The patent purpose of the last two provisions [3 and 4 above] of the statute imposing a tax on the transfer of property by deed, grant, sale or gift (1) in contemplation of death, or (2) intended to take effect in possession or enjoyment after the death of the donor, is to prevent persons from evading the tax imposed by the first two provisions. *Plainly, the taxation only of property which, if left to pursue its normal course, would pass under the inheritance statute or by will, is contemplated by the general inheritance tax statute* (Rem. Rev. Stat., § 11201). We agree with the argument of counsel for respondent that
" 'Life insurance, unless the insured or his estate is the beneficiary, is not of that character. *It does not pass by will or the statute of inheritances.*' " (Italics ours.)

Further on, in the opinion, this court said:

"The argument of counsel for respondent that the intent of the inheritance-tax statute is to impose an exaction upon property *which by the consent of the state passes from the dead to the living* is sustained by our statement, as follows, in *In re Sherwood's Estate,* 122 Wash. 648, 211 Pac. 734: [quoting a paragraph therefrom]

"*That is to say, the inheritance tax is an exaction by the state for permitting to be done that which can be done only with the state's permission. It can have no application to that for which the state's permission is not required. Therefore, as life insurance is a contract* made by one person for the benefit of another, in which *contract* the death of the insured *is not a factor except as fixing the time for performance by the insurance company, and as the right to make the contract and the right to fix the time for performance do not depend upon permission from the state, the contract of insurance, where the proceeds thereof are payable to a designated beneficiary, is not subject to the inheritance tax.*" (Italics ours.)

By the language hereinabove quoted from the *Killien* case, *supra,* the court very clearly and emphatically took the position, announcing it as a rule, that the right to receive the proceeds of an insurance policy does not spring from the death of the testator, but arises *from the contract of insurance*; and that, under a statute such as Rem. Rev. Stat., § 11201 (now Rem. Supp. 1945, § 11201), the proceeds of a life insurance policy are not property which passes *by will or by the statute of inheritance.*

The chief distinction, in point of fact, so far as we are here concerned, between the *Killien* case, *supra,* and the case now before us is that the *Killien* case involved the proceeds of life insurance policies which had matured by reason of the death of the insured, whereas the instant case involves the cash surrender value of policies which, even though the beneficiary named therein is now dead, have not yet matured.

That distinction, however, can make no difference upon the matter here in issue. The right to surrender an insurance policy and take the cash value thereof stands upon the same legal basis as the right to receive the pro-

ceeds of the policy itself. The right to cash-surrender a policy, like the right to receive the proceeds thereof, arises out of the *contract of insurance*, and does not spring from the death of a testator who is the beneficiary named in the policy.

In the case of *Occidental Life Ins. Co. v. Powers*, 192 Wash. 475, 74 P. (2d) 27, 114 A. L. R. 531, this court considered the two terms "cash surrender value" and "proceeds of life insurance," as used in Rem. Rev. Stat. (Sup.), § 11211-b [P.P.C. § 974-15], and concluded that, for inheritance tax purposes, there was no distinction between them. Answering a suggestion that the legislature had by this statute differentiated between "cash surrender value" and "proceeds of life insurance" payable at the death of the insured, this court said:

"The 'cash surrender value' always represents an amount less than the premiums paid. *The benefits and proceeds* of life insurance policies were paid for by community funds. Since we hold that they are property and, being paid for by community funds, are community property, *no sound distinction can be made between the two terms under that statute.*" (Italics ours.)

Following the decision in the *Killien* case, *supra*, the legislature at its next session, in 1935, enacted chapter 180, p. 706, Laws of 1935, which was subsequently amended by chapter 202, p. 692, Laws of 1939 (Rem. Rev. Stat. (Sup.), § 11202 *et seq.*). It is quite apparent that § 115 of the 1935 act, as amended by § 5 of the 1939 act (Rem. Rev. Stat. (Sup.), § 11211b), was enacted for the express purpose of modifying the rule declared in the *Killien* case to the extent that, by the amendatory statute, *proceeds of life insurance* in excess of forty thousand dollars were made subject to an inheritance tax. That statute provides:

"*Insurance payable upon the death* of any person shall be deemed a part of the estate for the purpose of computing the inheritance tax and shall be taxable to the person, partnership, or corporation entitled thereto. . . ."

By a proviso in that section, the sum of forty thousand dollars was made exempt; and, by a second proviso, in case

of insurance upon the life of a decedent officer or employee, or partner in a business enterprise, payable to the corporation or to a partner, where all the premiums upon the policy have been paid exclusively by such beneficiary, only the amount of the proceeds of the policy in excess of its cash surrender value immediately preceding the death of the decedent is to be deemed a part of the estate for the purpose of computing the inheritance tax.

It will be noted that this statute, by its express terms, applies only to "insurance payable upon the death of any person." It does not provide that the cash surrender value of a policy of insurance on the life of a *living person* shall be subject to inheritance tax. In fact, the second proviso above, indicates that the legislature took cognizance of the "cash surrender value" of insurance policies, but did not see fit to subject that interest to an inheritance tax under any circumstances. If the legislature had desired to impose an inheritance tax upon the *cash surrender value* of life insurance policies, as part of the estate of a deceased beneficiary, it would have been easy to express that intention in the statute which it enacted. If it now desires to do so, it can so provide by statute, but this it has not yet done.

■ The policies which are involved in this case were all payable upon the death of an insured who was the surviving spouse, and nothing whatever became payable on the death of the beneficiary, the deceased wife. In other words, even if the cash surrender value of a life insurance policy be considered to be property, still it is not property which passes *by will or by the statute of inheritance*. Whatever may be realized by anyone on the cash surrender value of such policies is acquired solely by virtue of the *contract* between the insurer and the insured.

In the briefs of counsel, a number of cases are cited wherein this court has gone to some length to preserve and protect the wife's interest in insurance policies upon the life of her husband, where the premiums are paid with community funds. While these cases are generally apposite in considering and determining the effect of community property laws

upon such insurance policies, they are of no particular assistance in the solution of the problem presented in this case.

The cash surrender value of the policies here involved is neither property which passed by will or by the statute of inheritance, under Rem. Supp. 1945, § 11201, nor "insurance payable upon the death of any person," as provided in Rem. Rev. Stat. (Sup.), § 11211b. It therefore is not subject to an inheritance tax.

The judgment is reversed, and the cause remanded with direction to the superior court to sustain the appellant executor's exceptions to the findings of the inheritance tax and escheat division, and to enter judgment accordingly.

MALLERY, C. J., BEALS, JEFFERS, and HILL, JJ., concur.

