**UNITED STATES of America,**
**Appellant,**

v.

**Ashby O. STEWART, Executor of the Last Will and Testament of Mary W. Stewart, Deceased, Appellee.**

**No. 16014.**

United States Court of Appeals
Ninth Circuit.

June 18, 1959.

Rehearing Denied Sept. 28, 1959.

Charles K. Rice, Asst. Atty. Gen., Helen A. Buckley, Lee A. Jackson, A. F. Prescott, Attorneys, Dept. of Justice, Washington, D. C., Lynn J. Gillard, U. S. Atty., San Francisco, Cal., for appellant.

George H. Koster, Richard W. Graham, San Francisco, Cal., for appellee.

Before DENMAN, Senior Circuit Judge, POPE, Circuit Judge, and JAMESON, District Judge.

JAMESON, District Judge.

Plaintiff seeks recovery of federal estate taxes paid on decedent's interest in certain life insurance and annuity policies.

Ashby and Mary Stewart were married in 1906 and their marital relationship continued until Mary's death on February 21, 1951. They were residents of California. At the time of the wife's death there were 26 insurance and annuity policies on the life of the husband, and seven annuity policies naming the wife as annuitant. The premiums on all of the policies were paid with community property funds.

Two questions are presented: (1) whether one-half of the cash value of the 26 policies on the life of the husband was properly includable in the wife's gross estate; and (2) whether all, or one-half, of the proceeds of five of the annuity policies in the name of the wife should be included.[1]

### Policies on Husband's Life

The Government contends that under the California law the decedent had a vested ownership interest of one-half of the cash value of the 26 policies on her husband's life, and that the policies are accordingly includable under Section 811 (a), Int.Rev.Code of 1939[2] to the extent of her interest, and if not includable under § 811(a), her interest is includable under either § 811(c)(1)(C) as a transfer intended to take effect in possession or enjoyment after her death or under § 811(d) as a revocable transfer.

Appellee contends that decedent's community interest in the insurance policies was merely the right to object to a payment of the proceeds to a third party beneficiary or to secure the proceeds where she was named beneficiary, both of which rights were contingent upon her surviving her husband; and that when she died before her husband these community property rights of protection died with her and were extinguished.

In determining whether one-half of the cash surrender value of these policies was includable in decedent's gross estate, three questions are presented with respect to each of the 26 policies: (1) Was the policy community property under California law at the time of decedent's death? (2) If so, what was the nature and extent of the decedent's interests in the policy under California law? (3) Were these interests of such a nature as to require the inclusion of any amount attributable to them in the decedent's estate for purposes of the federal tax?

The question of whether the interest of the wife in her husband's life insurance policies is includable in her estate for tax purposes is determined by the state law of community property. Poe v. Seaborn, 1930, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Lang v. Commissioner, 1938, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331. Under California law, where policies are taken upon the husband's life during coverture and premi-

---

1. No question has been raised on appeal with respect to two of the annuity policies, which the district court found to be separate property of the wife.

2. Section 811(a) Int.Rev.Code of 1939 provides: "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—(a) to the extent of the interest therein of the decedent at the time of his death; * * *." 26 U.S. C.A. § 811.

ums are paid from community funds, the policies are community property. New York Life Ins. Co. v. Bank of Italy, 1923, 60 Cal.App. 602, 214 P. 61; In re Castagnola's Estate, 1924, 68 Cal.App. 732, 230 P. 188.

The respective interests of the husband and wife in community property "are present, existing and equal interests * * *". Cal.Civ.Code, § 161a. The husband retains possession and control of the community property. Cal.Civ. Code, § 172. "Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof, goes to the surviving spouse * * *". Cal.Prob. Code, § 201.

While life insurance, because of its hybrid nature, is necessarily accorded individualistic treatment in the law generally, this fact has apparently not been regarded by the California courts as requiring that it be treated *sui generis* for the purposes of the community property laws. We find nothing in California law which indicates that life policies as items of community property are treated by rules other than or different from those pertaining to community property generally. See California Trust Company v. Riddell, D.C.S.D.Cal.1955, 136 F.Supp. 7, and Thurman, Fed.Estate & Gift Taxation of Community Property Life Insurance, 9 Stan.L.Rev. 239, (1957).

In Dixon Lumber Co. v. Peacock, 1933, 217 Cal. 415, 19 P.2d 233, 234, a wife's interest in insurance policies on her husband's life purchased with community property funds was held to be a "valuable property right", the relinquishment of which was valid consideration for an assignment by the husband to her of a mortgage.

The trial court held that all of the policies were community property, and appellee does not contend otherwise. Since

all premiums were paid with community funds, this conclusion is clearly correct, unless the wife subsequently released her interest, converting it into separate property of the husband. The determination of the question of taxability depends upon whether the wife so released her interest. Whether the wife released her interest depends not alone upon whether she consented to the designation of beneficiaries, but also upon the incidents of ownership retained by the insured in the respective policies. "(I)t may be said in general that incidents of ownership mean any power over an insurance policy which amounts to substantial ownership of the policy, such as the power to change the beneficiaries of the policy, to surrender the policy for its cash surrender value, to borrow against the policy, etc." [3]

■ The district court in holding that no part of the value of the insurance policies was includable in the wife's estate stated that the wife's interest was merely "a right of protection" which "did not enure to the benefit of anyone on her death since her death extinguished this right" and that "(b)oth before and after her death he had the right to take the cash surrender value of these policies without her consent, because he had the management and control of the community property." We are unable to agree that the wife's interest in the policies amounted to no more than "a right of protection". It is conceivable that under state law a thing could be termed "community property" and yet the wife's real interests in the thing be so insubstantial that nothing attributable to them could be included in her estate for federal tax purposes. Cf. Talcott v. United States, 9 Cir., 1928, 23 F.2d 897. The able trial judge used just such a rationale. His conclusion, however, overlooks the fact that if the husband took the cash surrender value before the wife's death, it would remain community property in which she had a one-half interest, but if he took the cash surrender value after

3. Lowndes and Kramer, Federal Estate and Gift Taxes, p. 275. See also Commissioner of Internal Revenue v. Chase

Manhattan Bank, 5 Cir., 1958, 259 F.2d 231, 245–246.

her death he would be the sole owner. In other words, the right to one-half of the cash value of the policies passed to the husband upon the death of the wife.

In California Trust Company v. Riddell, supra, holding that the decedent's wife had an interest in her husband's life insurance policies, which should have been included in her gross estate, the court said in part: "She has such an interest in community property that it is possible for her to will away her portion thereof and thus, at her death, cause a division of the community estate. Probate Code, § 202. The fact that the policies in question were retained by the husband and that he had a right to change beneficiaries at will does not mean he could deprive the wife of her community interest therein without her consent." 136 F.Supp. at page 9.

The trial judge, in his opinion, (158 F.Supp. 25) refers to two cases where the point here involved is considered, i. e., California Trust Company v. Riddell, supra, and Waechter v. United States, D.C.W.D.Wash.1951, 98 F.Supp. 960, affirmed 9 Cir., 1952, 195 F.2d 963. The judge was more persuaded by the reasoning in the Waechter case and by the fact that the decision was upheld by the Court of Appeals.

Prior to the Waechter case the Supreme Court of Washington in In re Knight's Estate, 1948, 31 Wash.2d 813, 199 P.2d 89, had held that no part of the cash surrender value of insurance policies on the life of a husband, the premiums for which were paid out of community property, is includable in the estate of the wife when she predeceases her husband, under the Washington inheritance tax statutes. The trial court in the Waechter case relied upon the Knight

case as binding in the interpretation of Washington law. Since the decision of the trial court in this case, however, the Supreme Court of Washington has expressly overruled In re Knight's Estate, saying in part: " * * * (W)e are constrained to hold that our decision in In re Knight's Estate, supra, was incorrect in holding that the cash surrender value of a life insurance policy is not property 'which passes by will or by the statute of inheritance.' In our opinion, the state in this case is taxing the receipt by Mrs. Leuthold's legatees, pursuant to her will, of her one-half interest in the cash values of these policies * * * and that, under the provisions of RCW 83.04.010, it is entitled to do so." In re Leuthold's Estate, 1958, 52 Wash.2d 299, 324 P.2d 1103, 1109.[4]

It should be noted also that both the Washington and California statutes impose an inheritance tax upon the property which passes either by will or by the statutes of inheritance. Section 811(a) includes in the gross estate for federal estate tax purposes property "to the extent of the interest therein of the decedent at the time of his death." An inheritance tax is an "excise or impost laid upon the privilege of receiving property by inheritance." In re Knight's Estate, supra. [31 Wash.2d 813, 199 P.2d 91] An estate tax is levied upon the privilege of transfer of property at death. "It does not tax the interest to which the legatees and devisees succeed on death, but the interest which ceased by reason of death; what is imposed is an excise upon the transfer of an estate upon death of the owner." Commissioner of Internal Revenue v. Clise, 9 Cir., 1941, 122 F.2d 998, 1001, and cases cited therein.[5]

4. Accord: Thompson v. Calvert, Tex.Civ. App.1957, 301 S.W.2d 496; Estate of Louisa Morris Carroll v. Commissioner of Internal Revenue, 1933, 29 B.T.A. 11 (Louisiana residents). See also Commissioner of Internal Revenue v. Chase Manhattan Bank, 5 Cir., 1958, 259 F.2d 231.

It is important to note that In re Leuthold's Estate was decided May 2, 1958,

subsequent to the opinion of the trial court in this case.

5. The distinction between the California Inheritance tax law and federal estate tax law was set forth by the California Superior Court for the County of San Diego in a recent unreported decision in Estate of Mendenhall, No. 56225. While the court held that the California in-

We come now to an analysis of the various policies to determine whether a substantial interest therein passed from the wife to the husband upon the wife's death.

■ With respect to seven [6] of the 26 policies, the husband retained the right to change the beneficiaries and to obtain the cash value, and the wife did not consent to the designation of beneficiaries. These policies are clearly includable in the wife's gross estate for tax purposes.

In thirteen policies,[7] the husband retained the right to change beneficiaries, and to obtain the cash value, but the wife endorsed the designation of beneficiaries or mode of settlement. It has been held that under California law a wife surrendered her community property interests in the proceeds of a policy on her husband's life by endorsing her consent to the designation of a beneficiary other than herself. Ettlinger v. Connecticut General Life Ins. Co., 9 Cir., 1949, 175 F.2d 870. It has also been held where the wife was designated primary beneficiary and the insured's mother final beneficiary under a community policy on the husband's life, that by consenting to the designation the wife had released her community interests in the proceeds of the policy in consideration for having received the right to the entire proceeds should she survive the insured and the period over which the proceeds were to be paid. Mayr v. Arana, 1955, 133 Cal. App.2d 471, 284 P.2d 21.

■ Both the Ettlinger case and the Mayr case, however, were concerned with the right to the proceeds of the policies after the death of the insured. Here we are concerned with the rights in the policies themselves during the existence of the community. It is important to recognize this distinction in determining what rights were retained by the wife in the community assets.[8] Under California law the husband has the power of management and control over insurance policies on his life, although he cannot give them away without the written consent of his wife. Cal.Civ.Code, § 172. In the event that the husband dies before the wife, she has the right to object to the proceeds of the policies going to a third person to the extent of her one-half interest therein. New York Life Ins. Co. v. Bank of Italy, 1922, 60 Cal.App. 602, 214 P. 61. However, if the wife takes no steps in her lifetime to invalidate a gift of community property by her husband,

---

heritance tax statute did not cover any interest in insurance policies on the life of a husband, where the wife predeceased the husband (relying in part upon In re Knight's Estate and the dissenting opinion in Re Estate of Leuthold), the opinion recognized "that there is a distinct difference between an estate tax and an inheritance tax", quoting from 26 Cal. Jur.2d at p. 691. § 13553 of the California Revenue and Taxation Code expressly provides that the community interest which goes to a surviving husband pursuant to Section 201 of the Probate Code is not subject to inheritance tax. It is apparent accordingly that the outcome of any appeal in the Mendenhall case would not affect our decision in this case.

6. Pacific Mutual Life Insurance Company Policy No. 336749, (Ex. J); Aetna Life Insurance Company Policy No. 530811 (Ex. L); Mutual Benefit Life Insurance Company Policies No. 838189 and 838190 (Ex. R); West Coast Life Insurance Company Policy No. 97457,

(Ex. S); and Aetna Life Insurance Company Policies No. 778050 and 778051 (Ex. T).

7. Equitable Life Assurance Society Policies No. 2,370,306; 1,926,371; 1,926,372; 2,249,133; 2,387,397; 2,387,396; 2,387,-398; 2,796,071 (Ex. H); Travelers Insurance Company Policies No. 409014 and 409015 (Ex. I); Massachusetts Mutual Life Insurance Company Policy No. 459078 (Ex. K), and Equitable Life Assurance Society Policies No. 9,577,484, and 9,577,482 (Ex. M).

8. In Commissioner of Internal Revenue v. Chase Manhattan Bank, 5 Cir., 1958, 259 F.2d 231, the court said that "there is a discoverable touchstone for applying orthodox community principles to insurance. The touchstone is the distinction between *policy-rights* and *proceeds-rights*." 259 F.2d at page 245. See also Thurman, Federal Estate and Gift Taxation of Community Property Insurance, 9 Stan.L.Rev. 239 (1957).

the gift to the designated beneficiaries becomes valid. Mayr v. Arana, supra

■ It was in view of these rules that the court in Mayr v. Arana said: "There was not a gift of the proceeds of the policy to (the husband's mother) since the decedent (husband) could have given one-half of the proceeds to his mother without his wife's consent, but in consideration of the wife's consenting to the policy whereby she became the primary beneficiary of the entire amount named in the policy she released her community interest, in the event of her death prior to her mother-in-law's, to (her mother-in-law)." 284 P.2d at page 25. It may well be true that had the husband predeceased the wife in the instant case, her consent to the designation of the beneficiaries would have precluded her from contesting such designation after the death of her husband, but such a rule should not be extended to the present situation. Where the husband retains both the right to obtain the cash value and the right to change beneficiaries, the wife cannot be held to have intended by her endorsement to surrender her community interest in the policies.

■ Moreover, where the insured designates a beneficiary but retains the right to change the designation, the interest of the beneficiaries prior to the death of the insured is that of a "mere expectancy of an incompleted gift." In re Castagnola's Estate, 1924, 68 Cal.App. 732, 230 P.188, 190. Or, as stated in Travelers' Ins. Co. of Hartford, Conn. v. Fancher, 1933, 219 Cal. 351, 26 P.2d 482, 483, "the designation of a beneficiary in a policy of life insurance initiates in favor of the beneficiary an inchoate gift of the proceeds of the policy, which, if not revoked by the insured prior to his death, vests in the beneficiary at the time of his death." Thus, the wife's endorse-

ment of the designation of beneficiaries was at most an assent to an incompleted gift, which was still incompleted at the time of her death. It was not a transfer to her husband. We hold therefore that the wife's interest in these 13 policies is includable in the wife's gross estate for tax purposes.

■ With respect to two annuity policies,[9] the wife made no endorsement, and the husband retained the right to change beneficiaries but he relinquished the right to obtain the value in cash. He did, however, retain the right to alter the mode of settlement and to elect to have the policy mature, i. e., to begin to receive monthly installments, at an earlier date. In other words, the policies remained a valuable asset of the community and one-half of their value should be taxed to the wife's estate.

■ Four annuity policies had matured at the time of the wife's death,[10] and pursuant to the settlement agreements the value of the policies was to be paid in 240 equal monthly installments. The husband was named as annuitant or first beneficiary, the wife the second, and others were named as subsequent beneficiaries. With respect to three of the policies,[11] the wife had consented to earlier settlement agreements which were revoked by the husband prior to his execution of the settlement agreement in effect when the wife died. (These transactions illustrate how illusory the wife's interest in the policies would be if it were held that by consenting to a revokable designation of beneficiaries, she surrendered her interest in the community property.) The wife did not sign the settlement agreements which were in effect at her death. Therefore, the wife's interest in these three policies must be included in her gross estate.

■ The wife did sign the fourth of the annuity contracts, issued by John

---

9. Mutual Life Insurance Company of New York Policies No. 225197 and 225198 (Ex. N).

10. New York Life Insurance Company Policy No. 123,101 (Ex. O); New York Life Insurance Company Policies No.

123,837 and 123,838 (Ex. P) and Hancock Mutual Life Insurance Company Policy No. 020695 (Ex. Q).

11. The three New York Life Insurance Company contracts.

Hancock Mutual Life Insurance Company. In effect the joinder of the husband and wife in this settlement agreement constituted a transfer by the community under which the community retained for its life, or the life of the survivor, the right to income from the property. In our opinion, this policy is includable under Section 811(c)(1)(B)(i), which provides: "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * * (c)(1) To the extent of any interest therein of which the decedent has at any time made a transfer * * * (B) under which he has retained for his life * * * (i) the possession or enjoyment of, or the right to the income from, the property * * *."

In any event, the wife's endorsement did not in our opinion constitute a surrender of her interest in the policy. Such a holding would mean that the payments coming to the husband under this contract would be his separate property rather than community property. We cannot presume that the wife so intended. Nor does the Ettlinger case[12] compel a contrary conclusion. It is one thing to hold that a wife's consent to a beneficiary designation on an insurance policy on the husband's life means that she gave up her interest in the proceeds of the policy after her husband's death. It is quite another to say that the husband and wife are making a gift of their community interests in an annuity contract when they join in a settlement agreement which has

the effect of insuring that the community, or the survivor thereof, will receive the annuity payments as long as either is alive.

In fact the language of the Mayr[13] case quoted above ("There was not a gift of the proceeds of the policy to (the husband's mother) since the decedent (husband) could have given one half of the proceeds to his mother without his wife's consent * * *.") militates against the conclusion that the husband made a gift of his interest in the annuities.[14]

■ We find accordingly that a substantial interest passed from the wife to the husband upon the wife's death with respect to all of the policies. Since we can find no warrant in California law for treating life insurance as a community asset differently from other kinds of property, we hold that at the time of the wife's death she had present, existing and equal interests with her husband in the policies; that these interests amounted to ownership of one-half of whatever value the policies had at the time of her death, and that such an amount must be included in her gross estate.[15]

### Annuity Policies Issued to Wife

■ The trial court found that the husband had relinquished his community property rights in two policies,[16] and that they were the separate property of Mrs. Stewart at the time of her death. No appeal was taken from this ruling. With respect to the five remaining policies[17] the trial court found that they

12. Ettlinger v. Connecticut General Life Ins. Co., 9 Cir., 1949, 175 F.2d 870.

13. Mayr v. Arana, 1955, 133 Cal.App.2d 471, 284 P.2d 21.

14. If the replacement value of the Hancock policy is not includable under § 811(c) (1) (B) (i), then it is includable under § 811(a), since the wife's signature on the settlement agreement did not, in our opinion, evidence a surrender of her community interest in the policy.

15. This is a logical result, since it is clear that upon the death of a husband, with a wife surviving, only one-half of the

proceeds of his life insurance, purchased with community funds, is includable in his estate. Lang v. Commissioner, 1938, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331.

16. Fidelity Mutual Life Insurance Company Policies No. 521822 and 521823 (Ex. C).

17. John Hancock Mutual Life Insurance Company Policies No. 0128280 and 0128263 (Ex. D); Aetna Life Insurance Company Policies No. AP 1849 and AP 1850 (Ex. E); and Equitable Life Assurance Society Policy No. 9685846 (Ex. F).

were community property at the time of Mrs. Stewart's death and that one-half of the cash surrender value accordingly was includable in her gross estate. In our opinion there is sufficient evidence to support the trial court's findings. See opinion at 158 F.Supp. 25.

The judgment is affirmed with respect to the policies issued to the decedent and reversed with respect to the policies issued to her husband and remanded for recomputation of the tax in conformity with this opinion.

Judge DENMAN did not participate in this opinion.

On Petition by Appellee for Rehearing

Before POPE, Circuit Judge, and JAMESON, District Judge.

PER CURIAM.

Appellee has filed a petition for rehearing and has requested that action thereon be deferred until Estate of Mendenhall, decided by the Superior Court of the State of California, in and for the County of San Diego, has been reviewed by the appellate court. In our opinion we stated that the outcome of any appeal in the Mendenhall case would not affect our decision. Is that conclusion justified?

Pursuant to § 811(a) Internal Revenue Code of 1939, 26 U.S.C.A. § 811(a), the value of the gross estate of the decedent for federal estate tax purposes is determined by including the value of all property (except real property outside of the United States) "to the extent of the interest therein of the decedent at the time of his death * * *." Testamentary disposition is not required, and the tax is not imposed upon the right of receiving property by inheritance. On the other hand, the state inheritance tax of California is imposed "either on the trans-mission or the exercise of the legal power of transmission of property by will or descent, or on the legal privilege of taking property by will or descent."[1]

The Mendenhall decision emphasizes many times the distinction between the federal estate tax and state inheritance tax. The basis for holding that the wife's interest in her husband's insurance policies was not subject to inheritance tax was summarized as follows: "It is the Court's view that no interest in the cash surrender value of the insurance policies involved in this case passed by will or inheritance; that a tax imposed on Mrs. Mendenhall's legatees, based on the assumption that something of value passed to them, is completely unjustified; that the interest therein received by Mr. Mendenhall was by reason of the contract of insurance. The Court does not deny that Mr. Mendenhall's position has been improved. The Court does, however, deny that the California inheritance tax statute covers such an interest as he has received, and whether it does or does not should be the prime issue in this case. * * * *"

Judge Thomas, in his opinion in the Mendenhall case, found the reasoning of Chief Justice Hill in his dissenting opinion in the Leuthold case [2] "most cogent and most persuasive". A portion of Chief Justice Hill's opinion, quoted in the Mendenhall decision, points up even more precisely the distinction between the federal estate tax and state inheritance tax. The Washington Court had held in the Knight case [3] that no part of the tax surrender value of the husband's life insurance policies was includable in the wife's estate, and this holding was expressly overruled by the majority opinion in the Leuthold case. Chief Justice Hill had participated in the Knight case. In his dissenting opinion in the Leuthold case, he said in part:

---

1. See article dealing with inheritance and gift taxes in 26 Cal.Jur.2d at page 691, quoted in the Mendenhall decision.

2. In re Leuthold's Estate, 1958, 52 Wash.2d 299, 324 P.2d 1103, 1111.

3. In re Knight's Estate, 1948, 31 Wash.2d 813, 199 P.2d 89.

"The fact \* \* \* is that insofar as the cash surrender value of these insurance policies is concerned, the only person who has received any benefit is Mr. Leuthold, and he has received it not because he was a legatee or an heir, but because of the nature of the contract of insurance.

\* \* \* \* \*

"The Knight case did not hold that a wife had no community interest in the cash surrender value of life insurance policies. It held, and I believe properly, that the interest, whatever its character, did not pass by will or by the statute of inheritance, but that it passed to her husband by the contract of insurance; and there was nothing in our inheritance tax law that made such a transfer of interest taxable."

Appellee's petition for rehearing relies strongly upon the opinion of the trial judge in the Waechter case,[4] which in turn was predicated largely upon the holding of the Washington Court in the Knight case. The decedent in the Waechter case died when the Revenue Act of 1942 was in effect. Section 811(e)(2) relating to community interest contained the following provision: "In no case

shall such interest included in the gross estate of the decedent be less than the value of such part of the community property as was subject to the decedent's power of testamentary disposition." The community property provisions of the 1942 Act were repealed by Section 351 of the Revenue Act of 1948, c. 168, 62 Stat. 110, effective with respect to estates of decedent dying after December 31, 1947. The decedent in this case died in 1951. Any requirement of testamentary disposition under the 1942 Act accordingly would not be applicable in this case.

We find nothing in the Mendenhall decision or other California cases to justify a conclusion that the decedent did not have a property interest in her husband's insurance policies at the time of her death. This interest was taxable as a transfer to her husband. In other words, there was a transfer to the husband within the meaning of Section 810 of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 810, even though it was not effected by will or inheritance.[5]

We see no reason accordingly for deferring action on appellee's petition for rehearing pending appellate review of Estate of Mendenhall. The petition for rehearing is denied.

4. Waechter v. United States, D.C.W.D. Wash.1951, 98 F.Supp. 960.

5. Both the Mendenhall opinion and the dissenting opinion in the Leuthold case expressly recognize that the husband's "po- sition has been improved", without calling the change in position a "transfer". Both of these opinions, however, were concerned with a transfer by will or inheritance.