*Decisions will be entered under Rule 50.*

---

DONALD SCOTT, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2171–63—2173–63. Filed March 31, 1965.

---

[1] Proceedings of the following petitioners are consolidated herewith: Robert Scott, docket No. 2172–63; and Estate of Burt Edsall, Deceased, Mary E. Edsall, Executrix, docket No. 2173–63.

*Mount Gordon Wild*, for the petitioners.
*Edward H. Boyle*, for the respondent.

·ATKINS, *Judge:* The respondent determined that there was a deficiency in estate tax in the amount of $10,400.81 due from the estate of Raymond R. Scott. He asserted that each of the petitioners, Donald Scott and Robert Scott, is liable for the full amount of the deficiency, as transferee and beneficiary of the estate. He also determined that the petitioner, Estate of Burt Edsall, is liable for the full amount of such deficiency, representing Burt Edsall's personal liability as executor, under sections 6901 and 6324 of the Internal Revenue Code of 1954, for such unpaid deficiency. Hereinafter Raymond R. Scott will be referred to as the decedent.

The issues for decision are: (1) Whether there should be included in the decedent's gross estate, under section 2042 of the Internal Revenue Code of 1954, only one-half of the proceeds of community life insurance policies purchased during the decedent's marriage and paid for with community funds, as petitioners claim, or whether the full amount of the proceeds of such policies, less the amount which was included in the gross estate of the decedent's deceased wife, should be included in the gross estate, as the respondent determined, and (2) whether there should be included in such gross estate, under section 2033 of the Code, only one-half of the amount of a check representing a loan on one of the life insurance policies received by decedent prior to his death, but which was never cashed, as the petitioners contend, or whether there should be included in the gross estate the full amount of such check, as determined by the respondent. The petitioners do not deny that they are liable for any deficiency in estate tax that may be properly due.

The facts have been stipulated and the stipulations are incorporated herein by this reference.

The decedent was a resident of California. He died testate on December 1, 1958. His wife, Ruth Scott, died testate on October 28, 1957. Sometime prior to his marriage to Ruth Scott on June 11, 1928, the decedent took out two life insurance policies on his own life. After their marriage, and while living in California, the decedent purchased with community funds eight more insurance policies on his life. After their marriage all premiums paid on all policies were from community funds.

At the time of her death, Ruth Scott was the primary beneficiary on each policy and the Scotts' two children, Donald and Robert, were contingent beneficiaries.

By her will, Ruth Scott bequeathed all her community interest in her husband's medical practice to her husband, the decedent, and bequeathed the rest, residue, and remainder of her estate to Robert and Donald Scott. Her estate was probated in Fresno County, Calif. On June 23, 1958, the estate of Ruth Scott filed a Federal estate tax return with the district director of internal revenue at San Francisco, Calif. Therein the executor of her estate did not include in the gross estate any amount on account of the life insurance policies.

In 1959, following the decision in *United States* v. *Stewart*, (C.A. 9) 270 F. 2d 894, the executor of the estate of Ruth Scott agreed with the district director of internal revenue that an amount of $15,946.76 (equal to one-half of the cash surrender value of the life insurance policies as of the date of Ruth Scott's death) was properly includable in her gross estate. The executor caused to be paid the additional estate tax resulting from such inclusion.

At some time after the death of Ruth Scott, the decedent changed the insurance policies by designating Robert and Donald Scott as primary beneficiaries.

During the period between the death of the decedent's wife and the death of the decedent, premiums of $4,550.68 became due and payable on the policies. Of this amount, $2,702.30 was paid by Donald and Robert from that portion of their mother's estate to which they were entitled as legatees. These payments were made by Donald and Robert to prevent the policies from lapsing, since the decedent was not in a position to make, or did not make, the necessary payments when they came due.

Two months prior to his death the decedent borrowed from the life insurance company $11,495.05 on one of the policies of insurance on his life, receiving a check therefor. However, this check was not cashed prior to the decedent's death.

The decedent's estate was probated in Fresno County, Calif. The decedent's estate tax return was filed on February 29, 1960, with the district director of internal revenue at San Francisco, Calif. In the estate tax return the executor included in the gross estate the amount of $57,173.43 purporting to represent one-half of the insurance receivable by beneficiaries, other than the decedent's estate, under policies on the life of the decedent. The respondent determined (and the parties agree) that the amount of insurance so receivable was $115,474.48 (being the face amount of the policies, less amounts borrowed against the policies, including the amount of $11,495.05 borrowed by the decedent 2 months prior to his death). He then determined that that amount, less, however, the amount of $15,946.76 which had been previously included in the deceased wife's gross estate, or a net amount of $99,527.72, should be included in the decedent's gross estate. Since there had been included in the return on account

923 of the policies an amount of $57,173.43, the net increase determined by the respondent in this respect was $42,354.29.

In the estate tax return there was included in the gross estate the amount of $5,747.52, representing one-half of the amount borrowed by the decedent, and represented by the check which the decedent had not cashed. In determining the deficiency the respondent included in the gross estate the entire amount of $11,495.05.

In determining the deficiency the respondent treated the amount of premiums paid by Donald and Robert Scott, $2,702.30, as debts of the decedent and allowed such amount as a deduction in computing the taxable estate.

After the death of the decedent the proceeds of all the insurance policies, as well as the other assets of the decedent's estate, were distributed to the beneficiaries, Donald and Robert Scott.

Section 2042 of the Internal Revenue Code of 1954 [2] provides for the inclusion in the gross estate of the amount receivable by all beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership.[3] The petitioners do not question the fact that the

---

[2] SEC. 2042. PROCEEDS OF LIFE INSURANCE.

The value of the gross estate shall include the value of all property—

(1) RECEIVABLE BY THE EXECUTOR.—To the extent of the amount receivable by the executor as insurance under policies on the life of the decedent.

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. * * *

[3] Sec. 20.2042–1(c), Estate Tax Regs., provides in part as follows:

"*Receivable by other beneficiaries.* (1) Section 2042 requires the inclusion in the gross estate of the proceeds of insurance on the decedent's life not receivable by or for the benefit of the estate if the decedent possessed at the date of his death any of the incidents of ownership in the policy, exercisable either alone or in conjunction with any other person. * * *

"(2) For purposes of this paragraph, the term 'incidents of ownership' is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. Similarly, the term includes a power to change the beneficiary reserved to a corporation of which the decedent is sole stockholder.

\*     \*     \*     \*     \*     \*     \*

"(5) As an additional step in determining whether or not a decedent possessed any incidents of ownership in a policy or any part of a policy, regard must be given to the effect of the State or other applicable law upon the terms of the policy. For example, assume that the decedent purchased a policy of insurance on his life with funds held by him and his surviving wife as community property, designating their son as beneficiary but retaining the right to surrender the policy. Under the local law, the proceeds upon surrender would have inured to the marital community. Assuming that the policy is not surrendered and that the son receives the proceeds on the decedent's death, the wife's transfer of her one-half interest in the policy was not considered absolute before the decedent's death. Upon the wife's prior death, one-half of the value of the policy would have been included in her gross estate. Under these circumstances, the power of surrender possessed by the decedent as agent for his wife with respect to one-half of the policy is not, for purposes of this section, an 'incident of ownership', and the decedent is, therefore, deemed to possess an incident of ownership in only one-half of the policy."

decedent at the date of his death possessed incidents of ownership in all the policies. However, they contend that such incidents of ownership existed with respect to only one-half of each policy and that hence the respondent erred in including in the gross estate any more than one-half of the amount receivable by the beneficiaries as insurance under such policies.

In support of their position, the petitioners contend that under the law of California the policies constituted community property, since the premiums were paid out of community funds; that under California law life insurance policies are subject to the same rules as pertain to other community property; that at the date of her death the decedent's wife had a vested interest in the policies; that she had a right to dispose of such interest by will; that she did so dispose of her interest by will, by bequeathing such interest to her sons, Donald and Robert; that by her will she disposed of a one-half interest in the policies themselves, and not merely the value of the one-half interest at the time of her death; that, therefore, at the time of the death of the decedent the sons owned a one-half interest in the policies: and that the decedent at that time owned no more than a one-half interest therein.

It is the position of the respondent that the decedent's wife at the time of her death owned an interest equal to only one-half of the cash surrender value of the policies as of that date, and he points out that the value of such interest, $15,946.76, which had been included in her gross estate, was not included by him in the decedent's gross estate. He contends that the wife had no vested interest, but only an expectancy, in the proceeds of the policies and that such expectancy terminated at her death which occurred prior to decedent's death; that all she could convey by her will to her sons was the vested interest which she had at the time of her death, namely, a one-half interest in the then cash surrender value of the policies; and that, therefore, at the date of his death, the decedent owned all remaining interest in the policies.

There can be no question, and the respondent does not dispute, that the policies were community property;[4] that the wife had a vested interest therein; and that she had the right to dispose of her interest by will. See *United States* v. *Stewart, supra; California Trust Co.* v. *Riddell*, (S.D. Cal.) 136 F. Supp. 7; and *In re Mendenhall's Estate,*

---

[4] On brief the respondent states that any premium payments made prior to the marriage out of separate property of the decedent would be *de minimis* and that he has, therefore, ignored any tax consequences thereof.

182 Cal. App. 2d 441, 6 Cal. Rep. 45; and cases cited therein. See also Cal. Civ. Code sec. 161(a) and Cal. Prob. Code sec. 201.[5]

The basic dispute between the parties is the extent of the interest which the decedent's wife had at the time of her death which she conveyed to the sons by her will. As stated, the petitioners contend that the wife had a full vested one-half interest in the policies themselves, while the respondent contends that she had a vested interest in the policies only to the extent of the then cash surrender value thereof.

The respondent relies principally upon *United States* v. *Stewart, supra.* In that case a husband, during marriage, had purchased insurance policies on his life, the premiums being paid with community funds. The wife predeceased the husband. It was held that there should be included in the gross estate of the wife, for Federal estate tax purposes, one-half of the cash surrender value of the policies. The court there stated in part:

if the husband took the cash surrender value before the wife's death, it would remain community property in which she had a one-half interest, but if he took the cash surrender value after her death he would be the sole owner. In other words, the right to one-half of the cash value of the policies passed to the husband upon the death of the wife.

\* .\* \* \* \* \* \*

Since we can find no warrant in California law for treating life insurance as a community asset differently from other kinds of property, we hold that at the time of the wife's death she had present, existing and equal interests with her husband in the policies; that these interests amounted to ownership of one-half of whatever value of the policies had at the time of her death, and that such an amount must be included in her gross estate.[15] [Footnote omitted.]

The petitioners point out that the *Stewart* case did not involve the estate tax liability of a surviving husband with respect to insurance policies, but involved the amount to be included, on account of insurance policies, in the gross estate of a wife who predeceased her husband. They state, in effect, that the language used by the court in that case should not be interpreted as meaning anything more than that the value of her one-half interest in the policies is properly to be determined by reference to one-half the cash surrender value of such policies.

[5] Since 1927 Cal. Civ. Code sec. 161(a) has provided in part as follows:
"The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code. \* \* \*"
Cal. Prob. Code sec. 201 provides as follows:
"Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the provisions of sections 202 and 203 of this code. \* \* \*"

We think, however, that the above-quoted excerpt from the opinion in the *Stewart* case establishes that under California law when a wife predeceases her husband her interest, at the time of her death, in insurance policies on the life of the husband amounts to ownership of one-half of the cash surrender value thereof at that time, and that that is the extent of the interest which passes from her upon her death. Her death puts an end to the possibility that she, as one of the owners of the community policies, would survive her husband and become entitled to one-half of the proceeds of the policies upon her husband's death. Thus, in the instant case, the wife of the decedent transferred to her sons by her will only an interest in one-half of the cash surrender value of the policies at the time of her death.

Accordingly, we think it must be considered that, within the meaning of section 2042 of the Code, the decedent at the time of his death had all the incidents of ownership with respect to the insurance policies, except to the extent of the amount of the cash surrender value thereof to which the sons were entitled; namely, one-half the cash surrender value of the policies at the time of the death of their mother. We, therefore, hold that the respondent did not err in including in the gross estate of the decedent the full amount receivable by the beneficiaries as insurance under the policies, diminished by the amount included in his predeceased wife's gross estate on account of the policies.

The petitioners contend that the respondent erred in including in the decedent's gross estate the full amount of the uncashed check for $11,495.05, representing the amount borrowed by the decedent shortly before his death on one of the policies. It is their contention that only one-half of such amount should be included in the decedent's gross estate, advancing the same reasons which they presented with respect to the insurance policies discussed hereinabove. What we have said hereinabove with respect to the wife's interest which she willed to her two sons is equally applicable here. The repondent, in computing the deficiency herein, reduced the amount of insurance receivable by the amount of this loan and one-half the cash surrender value of the aggregate of the policies as of the date of the wife's death. Under the circumstances, it is clear that the respondent did not err in including in the gross estate the full amount of the check for $11,495.05.

*Decisions will be entered for the respondent.*