## PFEIFFER v. COMMISSIONER OF INTERNAL REVENUE.*
### No. 142.
Circuit Court of Appeals, Second Circuit.

Feb. 15, 1937.

L. HAND, Circuit Judge, dissenting.

Roger S. Baldwin and M. Ward Whalen, both of New York City, for petitioner.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and Morton K. Rothschild, Sp. Assts. to the Atty. Gen., for respondent.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals partially affirming a deficiency determined by the Commissioner of Internal Revenue in the income tax of the petitioner for the year 1931 and fixing such deficiency in the amount of $89,841.75. Wm. R. Warner & Co. Inc.'s original capital stock consisted of 20,000 shares of preferred stock and 3,000 shares of common stock of the par value of $100 per share for both classes. The preferred stock was 6 per cent. cumulative, had no voting power, and was entitled to a preference on liquidation. On various occasions the corporation increased its authorized capital stock and capitalized its earnings by distributing stock dividends. In 1928 and 1931 it made distributions of preferred stock as dividends among its common stockholders which represented earnings and profits accumulated since its incorporation in 1920. Petitioner, as owner of 25,165 shares of common stock, received 12,582 preferred shares in 1928 and 6,291¼ shares in 1931. At the time of these distributions, the fair market value of each share was $100. In 1931 there were no unpaid dividends due on the outstanding preferred stock and the corporation and its subsidiaries had an earned surplus of over eight million dollars. In

*Writ of certiorari granted 57 S.Ct. 725, 81 L.Ed. —

1931 the corporation redeemed with cash at par 8,500 preferred shares, 2,000 of which petitioner owned, having received them in the 1928 distribution.

The Commissioner determined a deficiency in petitioner's income tax for 1931, first, because of the failure to include in income the fair market value, viz., $629,-125, of the preferred stock distributed to her in 1931, and, second, because of the failure to include as income $200,000 received from the redemption of the 2,000 preferred shares. The Board upheld the Commissioner's determination as to the first, holding that the stock dividend of 1931 was not exempt from taxation by section 115 (f) of the Revenue Act of 1928 (45 Stat. 822, 26 U.S.C.A. § 115 (f) and note). It ruled as to the second that, since the 1928 stock dividend was taxable income as of that year, each share had a basis of $100 in determining gain or loss, and that, since the redemption price was $100 per share, no taxable income existed. The Commissioner has not appealed from this ruling.

The dispute centers about the 1931 stock dividend, and the question is whether it is covered by section 115 (f) of the Revenue Act of 1928, 26 U.S.C.A. § 115 (f) and note, reading: "A stock dividend shall not be subject to tax." Does the statute exempt the preferred stock dividend paid upon common stock? A dividend of common stock paid upon preferred stock was held, in Com'r v. Tillotson Mfg. Co., 76 F.(2d) 189 (C.C. A.6), not to be tax exempt. The taxpayer had sold its preferred stock, and it was argued by the Commissioner that, since the stock dividend was tax free, the original cost basis of the preferred shares should be reduced by allocating a part thereof to the common stock. The court considered that the question depended upon whether or not the dividend was free of tax under the statute. It held that the dividend was subject to tax at the time of its distribution and that therefore the Commissioner's position was untenable. The same issue was presented in Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 767, 769, 80 L.Ed. 1268, 105 A. L.R. 756, where the court prescinded from the question whether Congress had, in the Revenue Acts of 1926 and 1928 (44 Stat. 9 and 45 Stat. 791), undertaken to tax the dividend upon its receipt. Its position was that such a dividend is constitutionally income and that no departmental regulations could compel the use of "income derived from a capital asset" to reduce cost.

The issue whether a preferred stock dividend on common stock is taxable under the 1928 act was presented in Gowran v. Com'r (C.C.A.) 87 F.(2d) 125, decided December 22, 1936, by the Seventh Circuit. Three months after receiving the preferred stock, the taxpayer sold it to the corporation at $100 per share. The court found no justification for implying a limitation into the comprehensive language of section 115 (f), 26 U.S.C.A. § 115 (f) and note, which exempts stock dividends without qualification, and held that, since the value of the tax-free dividend at the time of its receipt was $100 per share, no taxable income existed.

In the Koshland Case, supra, the court, because of the grounds upon which it rested its decision, did not find it necessary to decide whether the dividends there considered were exempt from tax under the statute. The language of the opinion, however, indicates that the court considered such dividends to be so exempt, saying:

"Although Eisner v. Macomber [252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570] affected only the taxation of dividends declared in the same stock as that presently held by the taxpayer, the Treasury gave the decision a broader interpretation which Congress followed in the act of 1921. Soon after the passage of that act, this court pointed out the distinction between a stock dividend which worked no change in the corporate entity, the same interest in the same corporation being represented after the distribution by more shares of precisely the same character, and such a dividend where there had either been changes of corporate identity or a change in the nature of the shares issued as dividends whereby the proportional interest of the stockholder after the distribution was essentially different from his former interest. Nevertheless the successive statutes and Treasury regulations respecting taxation of stock dividends remained unaltered."

This language indicates clear recognition that the exemption contained in the Revenue Act was broader than required by the decision of Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521,

9 A.L.R. 1570, and that it is coextensive with that contained in the regulations.

This fact is amply demonstrated by the background and history of section 115 (f). The Revenue Act of 1913 (38 Stat. 114) imposed an income tax on dividends; Towne v. Eisner, 245 U.S. 418, 38 S.Ct. 158, 62 L.Ed. 372, L.R.A.1918D, 254, held that a common stock dividend on common stock was not within the statute; Eisner v. Macomber, supra, held that such a dividend was not income and could not constitutionally be taxed; thereafter the Revenue Act of 1921 (42 Stat. 227) categorically excluded all stock dividends and, though the House and Senate Reports mentioned Eisner v. Macomber as a reason (H.R. 350, 67th Congress, 1st Sess., p. 8; Senate Rep. No. 275, 67th Cong. 1st Sess., p. 9), there is not the slightest suggestion that Congress foresaw, or, if it did foresee, that it intended to take advantage of, the fact that a different constitutional rule might apply to one or both types of dividends in stock of a different class from that held by the stockholder. Section 115 (f), 26 U.S.C.A. § 115 (f) and note, flatly declares that "a stock dividend shall not be subject to tax"; and section 115 (g), 26 U.S.C.A. § 115 (g) and note, makes an exception where a corporation cancels or redeems a stock dividend under such circumstances that the dividend is essentially "equivalent to * * * a taxable dividend." Koshland v. Helvering, supra, prompted the insertion in the Revenue Act of 1936, 26 U.S.C.A. § 115 (f), of a provision taxing a stock dividend upon stock of a different class.

 The administrative construction [1] of this statute is entitled to great weight. Fawcus Machine Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397; Brewster v. Gage, 280 U.S. 327, 50 S. Ct. 115, 74 L.Ed. 457. Both before and after the enactment of the Revenue Act of 1921 (42 Stat. 227), the Treasury Department has considered the term "stock dividend" as meaning any dividend paid by a corporation in its own stock. In Koshland v. Helvering, supra, a series of departmental regulations was overthrown which required an allocation of cost between the dividend stock and the stock on which it was declared. The statutory provisions demanding the deduction of cost in computing capital gain were deemed clear beyond all administrative interpretation and were held not to permit the use of income to reduce cost. If we say that originally the provision exempting stock dividends from taxation was, in view of Eisner v. Macomber, ambiguous, then the Treasury regulations would seem to have acquired the force and effect of law and the meaning of the re-enacted provisions would stand clarified; if we say that the statute was always free from ambiguity, then the regulations merely embodied its clear command.

 The appellee argues that the proceeds from the redemption in 1931 of 2,-000 shares of preferred stock distributed as a stock dividend in 1928 should be considered either (a) subject to a tax as a capital gain or (b) subject to taxation as the equivalent of the distribution of a taxable dividend pursuant to section 115 (g) of the Revenue Act. The question of taxability as capital gain of the $200,000 or any part thereof was not in issue before or decided by the Board of Tax Appeals. The contention that we have authority to sustain the deficiency pro tanto even though the issue was not raised before the Board nor decided by it nor assigned as error in the petition to this court for a review of the Board's decision is untenable. General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154; Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511. The Board held that this stock dividend redeemed in 1931 at $100 per share was taxable in the year 1928 when received and was therefore not taxable under section 115 (g); that it had a basis for gain or loss of $100 per share; and that therefore there was no taxable income from the redemption. The Commissioner did not file a cross-appeal. By the provisions of section 115 (g) the proceeds of the redemption of the stock can be taxed only if it occurs at such time and in such manner as to make the redemption essentially equivalent to the distribution of a taxable dividend. Since the Board did not so find, we cannot support this contention. Helvering v.

---

[1] 1. T. 1900, C.B. III—1, p. 82 (1924); 1. T. 2449, C.B. VIII—1, p. 101 (1929); 1. T. 2538, C.B. IX—1, p. 144 (1930); article 1548, Reg. 62 (1922), interpreting Revenue Act of 1921.

Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343.

Determination reversed.

L. HAND, Circuit Judge (dissenting).

There cannot be any fair doubt that Congress exempted stock dividends only because it supposed that Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, compelled it to do so. At that time those distinctions had not been suggested, which have now limited that ruling to shares of substantially the same kind. If Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268, 105 A.L.R. 756, had followed immediately upon the enactment of section 201 (d) of the Act of 1921 (41 Stat. 228), I should have had little doubt of the propriety—as there could have been none whatever of the desirability—of limiting its scope to such stock dividends as were not income; especially as we are dealing with a tax exemption and doubts go against the taxpayer. Preferred shares issued as a dividend upon common, are as much income, as common upon preferred, for the question is always whether a substantially new right has been created, just as it is in reörganization. Weiss v. Stearn, 265 U.S. 242, 44 S.Ct. 490, 68 L.Ed. 1001, 33 A.L.R. 520; Marr v. United States, 268 U.S. 536, 45 S.Ct. 575, 69 L.Ed. 1079. Of course, it is always possible to stick to the literal words, and to insist that "stock dividends" meant every dividend of stock; but that is never a good way to find out what words really mean; whether in a statute, a will, a deed, a contract, or when spoken. There is no way but to reinstate the circumstances in which they were uttered, and discover how much a reasonable person would have understood them to include. If that be done, I should think the result is reasonably clear.

Since 1921 there has, however, been administrative and legislative history with which we must reckon. The first reg-ulation after section 115 (f) was enacted (Article 1548, Regulations 62), declared that "stock issued by a corporation as a dividend does not constitute taxable income * * * but gain may be derived * * * from the sale of such stock." Since 1925 the form has been: "The issuance of its own stock," but the change is not important. Alongside of this there has always been somewhere in the regulations a provision, implementing as it were, the language I have quoted, and expressly prescribing that the basis must be reduced by the dividend. There has therefore never been any administrative interpretation of section 115 (f), so far as I can find, which did not immediately connect it with this method of calculating the "basis"; unless perhaps Article 115-10 (1) of Regulations 86, and its predecessors may be counted. I do not know how far I should have thought these provisions as a whole conclusive; and it is of no consequence, for Koshland v. Helvering, supra, 298 U.S. 441, 56 S. Ct. 767, 80 L.Ed. 1268, 105 A.L.R. 756, has settled it that so far as they affect the "basis," they have been invalid from the beginning. Thus, the only question now is whether though invalid as to that, they may still be authoritative in interpreting section 115 (f), taken alone. I cannot think that we should blow hot and cold; if the effort indirectly to charge the taxpayer with the new shares under the guise of diminishing his "basis" must break down, any concomitant interpretation as to exemption of the shares, qua income, ought to fall with it. Therefore Koshland v. Helvering, supra, seems to me in substance to have limited the relevant evidence of the intent of Congress to the bare words themselves, stripped of administrative gloss; and the bare words will not serve. I think the Board was right and I can find no convincing evidence that in Horrmann v. Commissioner, 34 B.T.A. 1178, 1180, a majority of its members have changed their minds.