## SCHOENFELD et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9011.

Circuit Court of Appeals, Ninth Circuit.

April 28, 1939.

Melville Monheimer and Van C. Griffin, both of Seattle, Wash., for petitioners.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Harry Marselli, and Clarence C. Dawson, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, HANEY, and STEPHENS, Circuit Judges.

WILBUR, Circuit Judge.

In the return of the value of the estate of Herbert A. Schoenfeld, who died April 21, 1933, for the imposition of a federal estate tax, a deduction of $65,190 from the gross estate was claimed under § 805 of the Revenue Act of 1932, c. 209, 47 Stat. 169, 280, amending § 303 (a) (1) of the Revenue Act of 1926, 26 U.S.C.A. § 412, because of a claim for that amount against the estate. The Commissioner allowed a deduction of $24,226.79 on account of the claim. An appeal was taken from the determination of the Commissioner to the Board of Tax Appeals which affirmed the Commissioner's findings. The petitioners seek a review of the decision of the Board of Tax Appeals.

In 1923, Maude F. Schoenfeld, sold 25.15 shares of stock in the Schoenfeld Holding Corporation to the decedent, Herbert A. Schoenfeld, Bessie Schoenfeld, his wife, and their brother, Berman Schoenfeld. In consideration of said sale the purchasers agreed jointly to pay an annuity to the seller during her life of from $1,000 to $1,500 a month and, after her death, to pay the sum of $500 per month, in the aggregate, for life, to the brothers and sisters of the seller. At the time of decedent's death there were four persons entitled to benefits under the contract, towit: Beatrice R. Falk, Nellie Falk, Violet Falk and Charles Falk (ages given as 48, 58, 59 and 70 years).

The interest of the decedent and his wife in the contract and on the stock acquired thereby was a community interest. The contract provided that all of the stock sold should be delivered to a bank and held by it as security for the payment of the annuities provided for in the agreement, and it is so held.

Maude F. Schoenfeld, the seller, died prior to June 26, 1931. On June 26, 1931 decedent's wife, Bessie B. Schoenfeld, died, her will was probated, and the estate taxes were paid to the United States. In fixing the amount of such tax on her estate, the joint ownership of Berman Schoenfeld was ignored and it was assumed that the community owned half the 25.15 shares of stock, and that a half of the community property (6.287 shares) should be included in her estate and that the other half (6.287 shares, now valued at $91,168.26) belonged to decedent. This method of apportioning the stock is not questioned by the Commissioner. In fixing the federal estate tax in the estate of the wife, Bessie B. Schoenfeld, who predeceased the decedent, a claim was made and allowed for a deduction from the gross value of the estate on account of the purchase price of one-half of the 12.575 shares of stock purchased by the community. The claimed deduction was allowed from her gross estate of an amount equal to the present worth of one-fourth of the total annuities, payable under the contract of 1923, which was the same as the allowance made by the Commissioner here as a deduction from the gross estate of the decedent, except as changed by the short lapse of time between the death of the spouses, his death having occurred in 1933. The 6.287 shares of stock accounted for in the estate of the decedent's wife, as her half of the community property, was bequeathed by her to the decedent for his life only, with remainder over to the three sons of the de-

cedent and his deceased wife. Consequently, the 6.287 shares coming to the decedent for his life only from his wife as the portion of the community property belonging to her was not included in the gross value of his estate.

Petitioners' claim is that notwithstanding the fact that decedent's interest in the 6.287 shares of stock coming to him for life from his wife as her share of the community property, ceased upon his death and that the value thereof is not included in decedent's estate, that, nevertheless, his estate was properly charged with the obligation of paying the entire indebtedness of the community incurred in the purchase of the stock, that is, the obligation to pay one-half the annuities therein specified. A claim based upon the contract of December 23, 1923, was presented on behalf of the annuitants by Beatrice R. Falk and allowed by the executors and by the probate court for the full amount claimed ($65,-190, being the full amount payable during the life expectancy of the annuitants). It is conceded that this allowance is not binding upon the United States in this proceeding.

Petitioners' first point can best be expressed in an excerpt from their brief, as follows:

"3. Community debts. The Board is quite right in its decision that under the Washington law only one-half of the community debts may be deducted from the decedent's half of the property. Section 1342 Remington's Revised Statutes of Washington so provides. [See Lang's Estate v. Com'r., 9 Cir., 97 F.2d 867]. We are not contending otherwise. Our contention is that by reason of the husband's failure to pay the wife's half of the community debt out of her half of the community estate (which he received as residuary legatee, [valued at $57,000]) made him, and on his death makes his estate, liable for the unpaid portion of the wife's half of the community debt, and that this liability is in addition to the liability which the Commissioner admits is his."

Thus, the petitioners concede that upon the primary obligation to pay annuities under the contract of December 23, 1923,

a deduction of only one-fourth of the liability was proper. The claim is that by accepting the residuary legacy, amounting to $57,000, payable to him under his wife's will, he thereby became obligated to pay the wife's half of the indebtedness under the contract of December 23, 1923, and that this obligation was distinct from his own obligation under that contract. As this point was not presented to the Board of Tax Appeals it cannot be presented to us. Helvering v. Salvage, Com'r., 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511; General Utilities Co. v. Helvering, 296 U.S. 200, 56 S. Ct. 185, 80 L.Ed. 154; Glassell v. Com'r., 5 Cir., 42 F.2d 653; Tricou v. Helvering, 9 Cir., 68 F.2d 280; Houston Natural Gas Corp. v. Com'r., 4 Cir., 90 F.2d 814; Pfeiffer v. Com'r., 2 Cir., 88 F.2d 3.

Petitioners' second contention is that the decedent's estate is liable for the wife's half of the community indebtedness incurred in the purchase of the stock in question by reason of the terms of her will under which the decedent acquired a life interest in her half of the community shares of stock. By the terms of this will the wife's interest in 12.575 shares of stock belonging to the community was bequeathed to the husband "for his natural life and upon his death to be distributed to my three sons, share and share alike, per stirpes". By the fourth provision of the will, shown in the margin,[1] the husband is directed to pay the community liability of her estate "out of the earnings on my community half of the stock hereinabove bequeathed to him for life". The contention is in effect that the husband was thus required to pay the amount of the annuities to accrue as the purchase price due from the community during the 20 or more years of the expectancy of the beneficiaries.

It is essential in order to establish such an obligation to show that the husband accepted the wife's half of the stock under the terms of the will or the decree of distribution thereunder, and that the claim had not been paid by the wife's estate. There is no finding of nonpayment. This court has no power to make findings to supplement or supplant those made by the Board. Helvering v. Rankin, 295 U. S. 123, 131, 55 S.Ct. 732, 79 L.Ed. 1343.

---

[1] "Fourth. I direct that any community liability to which my estate is subject because of the purchase of stock of the Standard Furniture Co., be paid by my husband out of the earnings on my community half of the stock of the Standard Furniture Company and/or the Schoenfeld Holding Corporation, hereinabove bequeathed to him for his life."

██ It remains to consider the contention of the petitioners that the amount of the indebtedness of the estate to be deducted from the gross estate is to be arrived at by taking the life expectancy of the beneficiaries as a group and ascertain the total annuities which should be paid during that period, ignoring the fact that such amounts accrued from month to month during that period. In advancing this contention the petitioners emphasize the fact that the gross estate is ascertained by fixing the value thereof but the amount to be deducted therefrom under § 303(a) (1) of the Revenue Act of 1926, as amended in 1932, is the amount of the claims against the estate and not the value of the claims against the estate. The Commissioner claims in effect that the only proper claim against the estate is an amount fixed by deducting the present value of the annuities payable under the contract. We see no escape from this conclusion. The amount of the claim properly allowable against the estate for a sum which the decedent agreed to pay in the future without interest would be the amount of .that payment less interest or, to say it in the reverse, an amount which, with interest compounded, would, on the day of payment, equal the installment then due. See In re Outfitters' Operating Realty Co., 2 Cir., 69 F.2d 90, affirmed, Irving Trust Co. v. Perry, Inc., 293 U.S. 307, 55 S.Ct. 150, 79 L.Ed. 379; In re Wisconsin Engine Co., 7 Cir., 234 F. 281.

Affirmed.