Estate of Walter A. May, Deceased, Mollie B. May and Edwin
C. May, Executors, Petitioners, *v.* Commissioner of Internal
Revenue, Respondent.

Docket No. 10170. Promulgated May 16, 1947.

*Charles H. Sachs, Esq.*, for the petitioners.
*Stanley L. Drexler, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: The first contention of the respondent is that the decedent had a power to revoke the 1933 trust under the amendment of December 27, 1941. His argument is that a grantor has the power to revoke a trust instrument unless he expressly states in that instrument that he does not retain such a power. He cites no authorities to support that contention. The petitioner contends, on the other hand, that the rule in Pennsylvania, where the decedent resided at the time he executed the trust instrument, and also the rule in New York, where the trustee is situated, is that a voluntary trust in which another person has an interest is irrevocable by the grantor unless he expressly reserves in the instrument a power to revoke it, citing *Gage* v. *Irving Bank & Trust Co.*, 222 App. Div. 92; 225 N. Y. S. 476; affd., 248 N. Y. 554; *Hammond* v. *Chemung Canal Trust Co.*, 141 Misc. Rep. 158; 252 N. Y. S. 259; *Kraft* v. *Neuffer*, 202 Pa. 558; *Reese's Estate*, 317 Pa. 473. Cf. *Charles E. Ives*, 29 B. T. A. 822, in which it was recognized that the grantor had no power to revoke where he had created a new trust containing no reference to such a power after revoking an earlier trust in which he had retained an express power to revoke. The instruments themselves and the evidence show that the decedent intended to surrender and not to retain his power to revoke the trust. That was the reason for omitting the express authority to revoke from the amendment of December 27, 1941. Thereafter he had no power to revoke the 1933 trust. *Neal* v. *Black*, 177 Pa. 83; *Rynd* v. *Baker*, 193 Pa. 486; *Fishblate* v. *Fishblate*, 238 Pa. 450.

The respondent argues that the decedent's power to revoke the trust under the amendment of December 27, 1941, is shown by the fact that he actually revoked it in part, since he caused the trustees to pay the gift tax on an alleged transfer brought about by the amendment in question. The respondent's point is that the decedent did this wholly on his own authority, but the evidence shows that his son, who was the only beneficiary at the time, joined in instructing the trustee to make the payment. Furthermore, that payment could have been collected from the trust as well as from the decedent. The son's interest was adverse to that of the decedent. Cf. *White* v. *Erskine*, 47 Fed. (2d) 1014. Our conclusion is that the decedent had no power to revoke the 1933 trust after the amendment of December 27, 1941.

The Commissioner contends, in the alternative, that the surrender of the power to revoke by means of the amendment of December 27, 1941, was made in contemplation of death. He points to the fact that the decedent suffered during all of his life from asthma. The evidence shows, however, that the physical condition of the decedent was no different in December 1941 from what it had been previously. Other evidence tends to show that he was not contemplating death at that

time, but was making extensive plans for the future. The evidence indicates further that the suggested change originated with his brother and that it was made for purposes connected with life, rather than in contemplation of death. It follows that the Commissioner erred in including the value of any part of the 1933 trust in the gross estate. It is unnecessary under this holding to consider certain alternative contentions made by the petitioners.

The petitioners have assigned as error the inclusion in the gross estate by the Commissioner of $934.08 representing a claim for refund of 1941 gift taxes. The explanation of the Commissioner in the notice of deficiency is that he has merely included the amount as a precaution pending the final determination of the claim. The petitioners state in their brief that suit on the claim was discontinued on January 29, 1947, which was after the hearing in this case. It is assumed herein that the parties are no longer in disagreement as to that item and that a proper adjustment will be made in the recomputation under Rule 50.

The petitioners claim a deduction of $64,062.50 as an indebtedness or claim against the estate due to Herbert at the date of the decedent's death. The amount represents 31.25 per cent of the losses which are expected to result during the remaining 15 years of the lease on the Liberty Avenue property. It is said that the decedent became personally liable and he made his estate liable for 25 per cent of any losses under the lease by his agreements of February 1, 1908, and December 13, 1911, and then, by an informal oral understanding, became similarly liable for one-fourth of his father's share, or 6.25 per cent. It appears, however, that the May Properties Trust became liable as lessee under the lease in 1926, and the decedent's estate can not be called upon to meet any liability under the lease as long as May Properties Trust is solvent. The petitioners suggest that the trust may become "depleted" and then the estate will have to pay 31.25 per cent of future losses. The record does not show that or when the trust is likely to become depleted. The lease had then 15 years to run. The operation under the lease had formerly been profitable, but had resulted in losses in several recent years, and there was no prospect then that it could be operated except at a loss. However, the trust was the operator and was paying the losses out of income from other properties held by it. No obligation due Herbert was being built up or was in prospect as long as the trust had other income in sufficient quantities. This record does not justify a finding that the decedent was liable at the time of his death for any certain amount under his agreements or for any amount which could then have been estimated within reasonable limits. It does not show that the decedent would ever be called upon to pay anything.

The petitioners make an alternative contention, claiming that the lease was a liability of the trust and should be offset against the value of assets of the trust in determining the value of the decedent's interest in the trust. That interest was 18.125 per cent. Others in addition to the Mays held interests in the trust. The lease was a liability of the trust and adversely affected the interest of every participant. There is evidence that the losses over the remaining 15 years might be expected to amount to about $208,000. But a loss of $208,000 spread over 15 years does not represent a current liability of that much. The parties are in agreement as to the total value of the assets of the trust. The question is, What was the value at death of the decedent's 18.125 per cent participation in the trust? The petitioners argue that the 18.125 per cent interest was worth less than 18.125 per cent of the net value of the trust properties. This whole question has been resolved by the finding that the decedent's 18.125 per cent interest in the trust was worth $25,000.

*Decision will be entered under Rule 50.*