374 F.2d 154
 67-1 USTC P 12,460
 Donald SCOTT, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Robert SCOTT, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
ESTATE of Burt EDSALL, Deceased, Mary E. Edsall, Executrix, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 Nos. 20391-20393.
 United States Court of Appeals Ninth Circuit.
 March 14, 1967.
 
 Robert G. Carter, Wild, Christensen, Carter & Blank, Fresno, Cal., for petitioners.
 Mitchell Rogovin, Asst. Atty. Gen., Richard M. Roberts, Acting Asst. Atty. Gen., All A. Jackson, Melva M. Graney, Fred E. Youngman, Solomon Warhaftig, Attys., Tax Div., Dept. of Justice, Washington, D.C., Lester Uretz, Chief Counsel, Internal Revenue Service, Washington, D.C., for appellee.
 Before BARNES and DUNIWAY, Circuit Judges, and POWELL, District Judge.
 DUNIWAY, Circuit Judge.
 
 
 1
 These are petitions to review a decision of the Tax Court of the United States. The principal question presented is, to what extent are the proceeds of life insurance policies upon the life of a deceased husband to be excluded from his estate for purposes of the federal estate tax in a case in which the policies had been community property of the husband and his wife under California law, but the wife predeceased the husband and disposed of her interest in the policies by her will.
 
 
 2
 The facts are not disputed and are embodied in a stipulation. Raymond B. Scott and Ruth Scott, residents of California, were married on June 11, 1928. Before the marriage, Raymond took out two life insurance policies on his own life. After the marriage he purchased with community funds eight more insurance policies on his life. After the marriage all premiums paid on all ten policies were paid from community funds.[1]
 
 
 3
 Ruth died testate, a resident of California, on October 28, 1957. On the day of her death she was named in each policy as the primary beneficiary and the Scotts' two sons, Donald and Robert, were named as contingent beneficiaries. Her estate was probated in Fresno County, California. Her will contained the following provisions: 'It is my intention by this will to dispose of all of my estate, whether separate or community in nature. * * * I give, devise and bequeath all of my said estate * * * to the following persons in the following manner. * * * All of the rest, residue and remainder of my estate I give, devise and bequeat in equal shares to my said two sons, Robert Scott and Donald Scott. * * *' The decree of distribution in her estate followed the terms of the will. Neither the will nor the decree of distribution specifically mentioned any interest in the insurance policies. The decree contained an omnibus clause distributing all property of the estate not described in the decree to the two sons. The policies were not inventoried in her estate. However, they were referred to in the estate tax return filed by her executor, who took the position that no part of the value of the policies was to be included in her estate.
 
 
 4
 In 1959, this court handed down its decision in United States v. Stewart, 9 Cir., 270 F.2d 894. As a result the executor agreed with the District Director of Internal Revenue that an amount equal to one-half of the cash surrender value of the policies as of the date of Ruth's death, namely, the sum of $15,946.76, should be included in her estate, and the executor paid additional estate tax by reason of this inclusion.
 
 
 5
 After Ruth's death, Raymond changed the designation of beneficiaries in the policies by naming the two sons, Donald and Robert, as primary beneficieries. During the period between the death of Ruth and the death of Raymond, premiums of $4,550.68 became due on the policies. Of this amount, $2,702.30 was paid by Donald and Robert to prevent the policies from lapsing. Presumably, the balance of the premiums were paid by Raymond, although the stipulation does not say so. Two months before his death, Raymond borrowed $11,495.05 on one of the policies. A check representing this amount was received, but had not been cashed, before his death.
 
 
 6
 Raymond died on December 1, 1958, a resident of California, and his estate was also probated in Fresno County. In the estate tax return for his estate, the executor included only one-half of the proceeds of the insurance policies, his position being that the other one-half had been Ruth's one-half community property interest, and had passed under her will to the two sons. The Commissioner assessed a deficiency and proceeded against the distributees of Raymond's estate as transferees, and against Raymond's executor. The position that the Commissioner took is stated in his determination as follows:
 
 
 7
 'In the estate tax return filed by the Estate of Raymond R. Scott, only one-half of the proceeds of ten life insurance policies on his life were included in his gross estate. It is determined that all of the proceeds, $115,474.48, less $15,946.76 previously reported in the gross estate of Ruth Scott, are includible. Accordingly, the reported gross estate is increased by $42,354.29, computed as follows:
 
 
 8
 Total proceeds $115,474.48
Less reported in gross
 estate of Ruth Scott 15,946.76
 ------------
Includible in Estate of
 Raymond R. Scott 99,527.72
Reported in return filed 57,173.43
 ------------
 Increase $ 42,354.29
 ___________"
 
 
 9
 He also included in the estate the full amount, rather than one-half of the amount, that Raymond had borrowed on one of the policies before his death. The Tax Court upheld the Commissioner.
 
 
 10
 The background of the present problem is carefully stated and analyzed by Professor Samuel D. Thurman in an article, Federal Estate and Gift Taxation of Community Property Life Insurance, 9 Stan.L.Rev. 239. The pertinent provisions of the Internal Revenue Code are set out in the margin.[2] Professor Thurman traces the history of the 'payment of premiums' and the 'incidents of ownership' tests for inclusion of insurance proceeds in the estate of the insured. He also shows that, even though the Congress, in 1954, eliminated the 'payment of premiums' test and embodied an 'incidents of ownership' test in section 2042, which appears to be very broad, the Treasury regulations and court decisions give effect to state law in determining ownership and therefore includibility. Since 1948, 'state property rules control the estate taxation of community property life insurance' (9 Stan.L.Rev. at p. 245). In substance, at least in community property cases, both the Commissioner and the courts have limited the effect of the incidents of ownership to the interest in the policy that belongs to the decedent.[3]
 
 
 11
 The Commissioner does not take a contrary position here. In his brief, he says:
 
 
 12
 'We agree with petitioners (Br. 7) that the question whether the interest of the wife in her husband's life insurance policies is includible in her gross estate for estate tax purposes is determined by state law. For the same reason, the amount includible in the husband's estate, or excludable therefrom, whether he predeceases the wife or survives her, is determined by state law. If the husband predeceases the wife, the wife's community interest at date of the decedent's death is excluded from his gross estate. Lang v. Commissioner, 304 U.S. 264 (58 S.Ct. 880, 82 L.Ed. 1331). If the wife predeceases the husband, and her community property interest is devised or bequeathed to others,[3] that event establishes the community interest to be excluded from his estate upon his subsequent death.'
 
 
 13
 The question then is, what interest did Ruth have in the policies under California law when she died? That interest, whatever it be, was bequeathed by her to the two sons.[4] There is a large number of California decisions dealing with life insurance polices as community property. Many are discussed in Professor Thurman's article. Their effect is well summarized by the California District Court of Appeal in Estate of Mendenhall, 1960, 182 Cal.App.2d 441, 6 Cal.Rptr. 45. In that case the court said:
 
 
 14
 'An insurance policy is property. It can be sold, assigned or bequeathed by the owner. Its pecuniary value is the same as though the owner held a promissory note of the insurance company payable on condition. Upon payment, the title to the money paid follows the title to the policy.' 'An insurance policy paid for from community funds is ordinarily community property.' 'Since the insurance premiums here involved were all paid from community funds, and there is no suggestion that any were paid prior to 1927, there is no question but that the wife's interest was 'present, existing and equal' and was a vested interest and that the has equal testamentary power with the husband.' 182 Cal.App.2d at 444, 445, 6 Cal.Rptr. at 47-48.
 
 
 15
 The decision was that where the wife had predeceased her husband, disposing of all of her property by will, her one-half interest in insurance policies upon his life, paid for with community funds, must be included in her estate for California inheritance tax purposes. The court did not, in that case, consider how her interest was to be valued.
 
 
 16
 We applied the same principles in United States v. Stewart, supra, coming to the same conclusion, for the purpose of federal estate tax, as the Mendenhall court did for purposes of the California inheritance tax.[5] We stated our holding as follows:
 
 
 17
 'Since we can find no warrant in California law for treating life insurance as a community asset differently from other kinds of property, we hold that at the time of the wife's death she had present, existing and equal interests with her husband in the policies; that these interests amounted to ownership of one-half of whatever value the policies had at the time of her death, and that such an amount must be included in her gross estate.' (270 F.2d at 902.)
 
 
 18
 We did not hold, as the Commissioner now argues, that the wife's only right was to receive one-half of the cash surrender value of the policies. That is the measure of value which the Commissioner chose in that case, and the taxpayer did not contest it; the question as to whether it was the correct measure was not presented to us.
 
 
 19
 The Commissioner now asserts that Ruth's only interest at her death, and therefore the only interest that passed to her sons under her will, was the right to receive one-half of the cash surrender value of the policies. The theory was developed more fully by his counsel at oral argument. In essence, it is that while the insured husband is alive the only value that can be realized is the cash surrender value, and that the right to receive the face amount of the policies upon the husband's death, a right in futuro-- the 'promissory note of the insurance company payable on condition,' Mendenhall, supra,-- is kept alive only by payment of further premiums by the husband after the wife's death. Consequently to the extent that the proceeds receivable at the husband's death exceed the cash surrender value at the wife's death, this is attributable to those premiums, which were not paid from community property, the marital community having been dissolved by the death of the wife. Accordingly, the entire proceeds, less one-half the cash surrender value at the time of the wife's death, are part of the husband's estate. The wife's legatees have no interest in them.
 
 
 20
 We think not. A policy of life insurance is a bundle of rights, of which the right (if any) to surrender the policy and receive the cash surrender value is but one. The California cases, by repeated holdings and dicta, make it clear that the wife's community interest, like that of the husband, is in the contract, the entire bundle of right, not in just one or more of those rights. We do not cite most of those cases here. Many are cited in the Mendenhall and Stewart decisions, and in Professor Thurman's article.
 
 
 21
 Most pertinent here are the cases that undertake to measure the interests of the spouses. The first line of cases deals with the situation in which the husband had taken out policies on his life before marriage and paid substantial premiums, had then married and paid additional premiums from community property, and had then died, naming a beneficiary other than the wife. The wife then claimed a portion of the proceeds as her share of the community property. If the Commissioner's theory were correct, one would expect the courts to have held that the entire proceeds of the policies, less the cash surrender value, if any, at the date of the marriage, was community property, the husband's separate property interest being limited to that cash surrender value. But the courts of California have not so held. On the contrary, they determine what portion of the proceeds is community property by applying to the total proceeds a fraction of which the numerator is the total amount of premiums paid from community funds and the denominator is the total amount of premiums paid during the life of the policy. The balance is separate property of the husband.[6]
 
 
 22
 The Modern Woodmen of America case expressly rejects the Commissioner's theory. There, the husband purchased the policy in 1898. He married in 1923. After the marriage, he paid four quarterly premiums from community funds. He died in 1924. It was contended by the wife that the policy was 'renewable and lapsable,' and that the proceeds were the product only of the last premiums paid, so that the entire proceeds were community property. When the policy was purchased, the husband had had to pass a physical examination; when he married, he had passed the age at which he could have taken out a new policy. So far as appears, the policy had no cash surrender value. The court held:
 
 
 23
 'While the right of his beneficiaries to receive the proceeds of the policy was dependent upon his continuing to pay the accruing premiums thereon, nevertheless he had acquired the right to have the contract of insurance continued in force by virtue of the payment of premiums from its issuance to him in 1898 until the date of his second marriage in 1923. This was a valuable right in the eyes of the law and it would be unreasonable to hold that the payment of the premiums paid after 1923 from the community funds would convert the entire proceeds of the certificate of insurance into community property. 'Where, as here, the life insurance is paid for partly with community and partly with separate funds the proceeds of the policy should in our judgment be apportioned in the same ratio that the amount of such community funds paid for premiums bears to the amount of separate funds paid for such purpose.' (113 Cal.App. at 732-734, 299 P. at 755.)
 
 
 24
 The Gettman case also rejects the Commissioner's theory; it cites and follows Modern Woodmen.
 
 
 25
 A second line of cases deals with situations in which the premiums were paid from community funds until the community was dissolved during the lifetime of the insured husband and his wife, and further premiums were paid by him thereafter from his separate property. These cases apply the same rule.[7] In one of these cases, McBride v. McBride, the court again rejected arguments similar to those of the Commissioner. It also held that, upon divorce and the consequent dissolution of the community, the parties became tenants in common of the policy, which, up to that time, had been paid for with community funds.
 
 
 26
 Two consequences of these lines of authority should be emphasized. The first is that they determine the extent of the interest of the wife in the policy, her ownership; they are not cases in which the court merely valued the interest as of a particular time for tax purposes. The second is that they show that, because of the peculiar nature of an insurance policy, the wife's proportional interest can either grow or diminish. It grows as more premiums are paid from community funds; it diminishes as more premiums are paid from the husband's separate funds.
 
 
 27
 Applying these consequences here, we hold: (1) That when Ruth died and bequeathed her 1/2 community interest to the sons, they became tenants in common of the policies with Raymond; (2) That when, thereafter, Raymond paid additional premiums, to that extent he acquired an interest of his own in the policies, and the interest that he and the sons held in them as tenants in common was thereby diminished.
 
 
 28
 The Commissioner treated the payment by the two sons of a portion of the premiums that were paid after Ruth's death as a loan to Raymond, and that determination is not here attacked. The obligation of Raymond to the sons was allowed as a deduction in computing the estate tax on Raymond's estate. Thus the entire amount of the premiums that were paid by Raymond after Ruth's death was paid by him, not by the sons. The money, of course, was his separate property, not community property. The proportionate part of the proceeds that is attributable to those premiums is therefore includible in his estate. One-half of the balance of the proceeds, attributable to premiums paid during the marriage from community funds, belonged to the sons, and is to be excluded from Raymond's estate, whether that amount be larger or smaller than one-half of the cash surrender value of the policies at the time of Ruth's death. The record before us, however, does not permit the computation required to produce the correct result.
 
 
 29
 There remains the question as to what portion of the money borrowed on one of the policies by Raymond is to be included in his estate. In California, money borrowed upon the security of community property, where the lender does not rely upon the personal credit of the borrowing person, is community property, and money similarly borrowed upon the security of separate property is separate property.[8] The California District Court of Appeal has held that the interest of a surviving wife in securities purchased after the husband's death with the proceeds of a policy of life insurance upon his life, is to be determined by the extent of her interest in the policy proceeds, computed in the manner already discussed, on the basis of the portion of the premiums that had been paid from community funds.[9] We think that the same rule is applicable to the money borrowed by Raymond.
 
 
 30
 The decision of the Tax Court is reversed, and the matters are remanded to that court for further proceedings consistent with this opinion.
 
 
 
 [1]
 In his brief before the Tax Court the Commissioner stated 'The tax consequences of any separate property payments prior to marriage * * * have been ignored on a de minimis basis.'
 
 
 [2]
 26 U.S.C. 2033: 'The value of the gross estate shall include the value of all property * * * to the extent of the interest therein of the decedent at the time of his death.'
 26 U.S.C. 2042: 'Proceeds of life insurance. The value of the gross estate shall include the value of all property--
 (2) Receivable by other beneficiaries.-- To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. * * *'
 
 
 [3]
 See Treasury Regulations on Estate Tax (1954 Code), Sec. 20.2042-1: 'Proceeds of life insurance
 '(c) Receivable by other beneficiaries.
 '(2) For purposes of this paragraph, the term 'incidents of ownership' is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. Similarly, the term includes a power to change the beneficiary reserved to a corporation of which the decedent is sole stokholder.
 (5) As an additional step in determining whether or not a decedent possessed any incidents of ownership in a policy or any part of a policy, regard must be given to the effect of the State or other applicable law upon the terms of the policy. For example, assume that the decedent purchased a policy of insurance on his life with funds held by him and his surviving wife as community property, designating their son as beneficiary but retaining the right to surrender the policy. Under the local law, the proceeds upon surrender would have inured to the marital community. Assuming that the policy is not surrendered and that the son receives the proceeds on the decedent's death, the wife's transfer of her one-half interest in the policy was not considered absolute before the decedent's death. Upon the wife's prior death, one-half of the value of the policy would have been included in her gross estate. Under these circumstances, the power of surrender possessed by the decedent as agent for his wife with respect to one-half of the policy is not, for purposes of this section, an 'incident of ownership,' and the decedent is, therefore, deemed to possess an incident of ownership in only one-half of the policy.'
 
 
 [4]
 It is well settled in California that a decree containing an omnibus clause is effective, even as to property of which at the time no one was aware. See Miller v. Pitman, 1919, 180 Cal. 540, 182 P. 50; Heydenfeldt v. Osmont, 1918, 178 Cal. 768, 175 P. 1; Marcone v. Dowell, 1918, 178 Cal. 396, 173 P. 465; Humphry v. protestant Episcopal Church, 1908, 154 Cal. 170, 97 P. 187; Smith v. Biscailuz, 1890, 83 Cal. 344, 21 P. 15, 23 P. 314
 
 
 [5]
 The mendenhall decision is a reversal of the trial court decision in that case. We cited and distinguished the trial court decision in United States v. Stewart, supra. See 270 F.2d at 899, n. 5
 
 
 [6]
 Modern Woodmen of America v. Gray, 1931, 113 Cal.App. 729, 299 P. 754; Field v. Bank of America, 1950, 100 Cal.App.2d 311, 223 P.2d 514; Gettman v. City of Los Angeles Dept. of Water and Power, 1952, 87 Cal.App.2d 862, 197 P.2d 817; cf. Lang v. Commissioner of Internal Revenue, 1938, 304 U.S. 264, 268, 58 S.Ct. 880; Travelers Ins. Co. of Hartford, Conn. v. Fancher, 1933, 219 Cal. 351, 26 P.2d 482; New York Life Ins. Co. v. Bank of Italy, 1923, 60 Cal.App. 602, 214 P. 61
 
 
 [7]
 Polk v. Polk, 1964, 228 Cal.App.2d 763, 39 Cal.Rptr. 824 (community dissoved by desertion of the wife, Cal.Civ.Code 175); McBride v. McBride, 1936, 11 Cal.App.2d 521, 54 P.2d 480 (community dissolved by divorce); cf. Estate of Castagnola, 1924, 68 Cal.App. 732, 230 P. 188; Estate of Wedemeyer, 1952, 109 Cal.App.2d 67, 240 P.2d 8 (both involved simultaneous death, the wife presumed to have died first)
 
 
 [8]
 Heney v. Pesoli, 1895, 109 Cal. 53, 41 P. 819; In re Abdale's Estate, 1946, 28 Cal.2d 587, 170 P.2d 918; Gudelj v. Gudelj, 1953, 41 Cal.2d 202, 259 P.2d 656; Hicks v. Hicks, 1962, 211 Cal.App.2d 144, 27 Cal.Rptr. 307
 
 
 [9]
 Field v. Bank of America, 1950, 100 Cal.App.2d 311, 223 P.2d. 514