ESTATE OF INEZ G. COLEMAN, DECEASED, D. C. COLEMAN, JR., EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4333–68.   Filed September 9, 1969.

*Sydney S. Traum*, for the petitioner.
*Glen W. Gilson II*, for the respondent.

#### OPINION

TANNENWALD, *Judge:* Respondent has asserted a deficiency against petitioner of $20,334.75 in estate tax. The issues for decision are (1) whether the amount to be included in decedent's gross estate under section 2035 [1] should be a prorata portion of the proceeds of insurance on decedent's life or the amount of the premiums conceded to have been paid by the decedent in contemplation of death and (2) whether a potential obligation of the decedent, as lessor, to refund a $36,000 security deposit under a lease constitutes a deductible claim under section 2053.

All of the facts have been stipulated and are found accordingly.

The decedent, Inez G. Coleman, died on July 9, 1964. D. C. Coleman, Jr., received letters testamentary as executor on July 24, 1964, and was a legal resident of Miami, Fla., at the time of the filing of the petition herein. The Federal estate tax return was filed with the district director of internal revenue, Jacksonville, Fla.

### Includability of Life Insurance Proceeds

On June 23, 1961, decedent's three children purchased as record owners and beneficiaries an insurance policy on her life.[2] The children owned the policy; the decedent never possessed or transferred any of the record incidents of ownership. Decedent paid all the premiums, totaling $4,821. Of the total premiums, $3,373 was paid within

---

[1] All references are to the Internal Revenue Code of 1954, as amended.
[2] The record does not reveal whether the policy was term or whole life or some other variant.

3 years of her death. The parties agree that only $1,686.50 of this latter amount was paid in contemplation of her death. Upon decedent's death, her children received a total of $25,905.94 in proceeds as beneficiaries of the policies.

The petitioner contends that only $1,686.50, the money amount of the premiums paid in contemplation of death, should be included in the gross estate. The respondent contends that the amount to be included in the gross estate is that part of the total proceeds which bears the same proportion to the total proceeds as the premiums paid in contemplation of death bear to the total premiums paid. The issue thus joined is one of first impression in this Court.

At the outset, it is important to note that we are not here concerned with the unquestioned power of Congress to impose an estate tax on the proceeds of life insurance based upon the amount of premiums paid by the decedent. *United States* v. *Manufacturers Nat. Bank*, 363 U.S. 194 (1960). Nor are we concerned with *whether* the decedent made any transfer at all. Compare *Chase Nat. Bank* v. *United States*, 278 U.S. 327 (1929). Rather, the question before us is *what* did the decedent transfer.

We also underscore the fact that respondent's position is premised upon the applicability of section 2035 [3] and not upon section 2042. See sec. 20.2042–1(a)(2), Estate Tax Regs. The latter section is clearly inapplicable, since includability of the proceeds of life insurance under its provisions depends upon the retention of incidents of ownership by the decedent—an element which respondent concedes is nonexistent in this case.

Petitioner argues that when Congress abolished the "premium payment" test by the enactment of section 2042 in 1954, it necessarily precluded the inclusion of any portion of the proceeds of life insurance based upon the amount paid. Heavy reliance is placed upon the explanation of the legislative committees that "This section revises existing law so that the payment of premiums is no longer a factor in determining the taxability under this section of insurance proceeds." See H. Rept. No. 1337, 83d Cong., 2d Sess., p. A316 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess., p. 472 (1954). We are unable to agree fully with petitioner's argument. The quoted sentence is limited by the phrase "under this section." It is therefore not automatically determinative of congressional intent. Nevertheless, it is clear from the legislative history that Congress sought to inter the "premium payment" test with the ashes of the 1939 Code as an independent generating

---

[3] SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.

force for the includability of insurance proceeds. Under these circumstances, we hesitate to adopt an expansive construction of section 2035 in the area of life insurance, which would permit that test to rise phoenixlike from the language of that section.

Section 2035, by its terms, applies only to a "transfer" of an interest in property by a decedent. In Rev. Rul. 67–463, 1967–2 C.B. 327, respondent decreed that the mere payment of premiums operated as transfer of an interest in the proceeds of insurance—in this case, by the decedent to her children. We disagree.

If the decedent had purchased a life insurance policy, initially retaining the ownership in herself, and thereafter assigned it to her children, there clearly would have been a "transfer" of an interest in the policy. E.g., *Vanderlip* v. *Commissioner*, 155 F. 2d 152 (C.A. 2, 1946); *Estate of Arthur H. Hull*, 38 T.C. 512, 525, 530 (1962), reversed on other grounds 325 F. 2d 367 (C.A. 3, 1963). Cf. *Liebman* v. *Hassett*, 148 F. 2d 247 (C.A. 1, 1945). If, on the other hand, decedent had given money to her children, and they, entirely on their own volition, had chosen to purchase an insurance policy on her life, it would be equally clear that only the money would have been "transferred." Cf. *Humphrey's Estate* v. *Commissioner*, 162 F. 2d 1 (C.A. 5, 1947), affirming a Memorandum Opinion of this Court.

The purpose of section 2035 is to prevent the avoidance of estate tax through the use of gifts as a substitute for testamentary disposition of what would otherwise be included in the gross estate. *Milliken* v. *United States*, 283 U.S. 15 (1931); see *Liebman* v. *Hassett*, 148 F. 2d at 251. The focus, therefore, must be on what the decedent parted with as a result of her payment of the premiums in contemplation of death. Decedent held no interest whatsoever in the policy or its proceeds. Her children were the sole owners of the policy and only they could deal with rights and benefits flowing therefrom. To be sure, these payments kept the economic substance of that ownership alive. But the decisive point is that what these payments created or maintained was theirs and not hers. In these circumstances, we can see no basis for concluding that there was a constructive transfer of an interest in the policy. The only thing diverted from her estate was the actual money paid.

The question whether the payment of premiums can be equated with a transfer of the proceeds of an insurance policy has previously been considered in another context. In *Goodnow* v. *United States*, 302 F. 2d 516 (Ct. Cl. 1962), the decedent was the income beneficiary for life of a trust of the proceeds of insurance on the life of her deceased husband. At no time did the decedent have any of the incidents of ownership in the policies or any power to change the terms of the governing trust instrument. She had, however, paid all the premiums.

Upon her death, the Commissioner of Internal Revenue sought to include the principal of the trust (i.e., the insurance proceeds) in her gross estate under section 2036(a)(1), contending that, by the payment of premiums, she had in effect made an inter vivos transfer of property with a retained life interest. The Court of Claims rejected this contention and held that the payment of premiums did not constitute a transfer of the insurance proceeds. The same rationale was applied in *Estate of Ida Jarvis Pyle*, 36 T.C. 1017 (1961), affd. 313 F. 2d 328 (C.A. 3, 1963), and *Estate of Miran Karagheusian*, 23 T.C. 806 (1955), reversed on another ground 233 F. 2d 197 (C.A. 2, 1956). In the latter case, we stated:

The facts show that the insurance policy was applied for by Zabelle [decedent's wife], issued to her, and transferred by her to the trustee. Decedent, never having owned the policy, could not and did not make any transfer of it in contemplation of death or otherwise.

See 23 T.C. at 814. See also *National City Bank of Cleveland* v. *United States*, 371 F. 2d 13, 16 (C.A. 6, 1966).

The precise issue herein has been decided by two U.S. District Courts. In *Gorman* v. *United States*, 288 F. Supp. 225 (E.D. Mich. 1968), Judge Kaess, in an exhaustive opinion which analyzes in detail and fully distinguishes the principal cases relied upon by respondent herein, upheld the taxpayer. In *First National Bank of Midland* v. *United States*, an unreported case (W.D. Tex. 1968, 69–1 U.S.T.C. par. 12,574, 1969 P.–H. Fed. Tax Serv. par. 147,310), the position of the Government was sustained exclusively on the authority of Rev. Rul. 67–463, *supra*.

We agree with *Gorman* v. *United States*, *supra*, and hold that the frontiers of section 2035 should not be extended to include the proceeds of life insurance simply because a decedent paid the premiums. Only the dollar amount of the premiums paid in contemplation of death is includable in the gross estate of the decedent herein.

## The Security Deposit

In 1958, decedent, as lessor, leased certain property for a 99-year term expiring December 31, 2057. Upon the execution of the lease, she received a $36,000 security deposit. Since there was no requirement that the money be kept segregated, it was commingled with her other funds. Under the lease agreement, as amended in 1959, the deposit was security for the performance of all the lessee's obligations under the lease. The lease agreement contained numerous covenants on the part of the lessee, including, among others, covenants to pay rent, to pay all taxes, to pay costs of title and tort litigation, to indemnify the lessor against any adverse judgment suffered in such litigation, to maintain certain insurance upon the property, to allow the lessor or her

agents entry upon the premises to examine the condition thereof, to demolish no improvements without the lessor's written consent, to construct no new improvements without the lessor's written consent, and to keep the premises in good repair. In the event that the lessee breached any provision of the lease, the lessor was entitled to retain the security deposit as a partial liquidation of her damages.

Petitioner seeks to deduct the full $36,000 security deposit under section 2053.[4] Respondent argues that, at the date of death and even at the time of the submission of this case, it was not known whether the deposit would ever have to be paid to the lessee and that such a contingent liability cannot be allowed as a deduction. We agree with respondent.

When decedent died, the lease had $93\frac{1}{2}$ years left to run; the lessee will be entitled to the $36,000 only if it faithfully performs its duties under the lease in each of those years. On the record before us, we have no way of determining whether the estate will ever be called upon to make any payment or, if a payment should be required, what the amount would be.

Petitioner contends that the fulfillment of the conditions for the repayment of the deposit is entirely within the control of the lessee. Petitioner's argument misses the point. It is undisputed that an enforceable claim (whether against the estate or against the property alone) does not exist now; the question is whether such a claim will ever exist. The fact that the lessee controls the contingencies does not allow us to find that it will choose to perfect its claim. In short, what little evidence there is indicates the likelihood that the deposit will never be repaid. Indeed, the appraiser, whose report was attached to the estate tax return, found that the lease was an unfavorable one from the point of view of the lessee and that it was reasonable to expect, as of the date of the decedent's death, that the lessee would either demand a reduction in rent or abrogate the lease.

We hold that no amount with respect to the security deposit is allowable as a deduction under section 2053. Accord, *Estate of Walter A. May*, 8 T.C. 1099, 1103 (1947), *Estate of William P. Metcalf*, 7 T.C. 153, 161–162 (1946), affirmed without opinion (C.A. 6, 1947). Cf. *Buck v. Helvering*, 73 F. 2d 760 (C.A. 9, 1934); *Estate of Mary Redding*

---

[4] SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

\* \* \* \* \* \* \*

(3) for claims against the estate, and

(4) for unpaid mortgages on, or any indebtedness in respect of property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

*Shedd*, 37 T.C. 394, 397 (1961), affd. 320 F. 2d 638 (C.A. 9, 1962), and cases cited therein. See generally 4 Mertens, Law of Federal Gift & Estate Taxation, sec. 26.41 (1959).[5]

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

TIETJENS, *J.*, dissenting: I respectfully dissent on the issue of the includability of a portion of the life insurance proceeds in decedent's estate.

As I see it the problem is really not whether there was a "transfer" in contemplation of death. The taxpayer concedes there was such a transfer, but says it was of money only, i.e., the amount of the premiums paid by decedent. The real question is how to value that transfer. I think it should be valued at what the amounts paid as premiums purchased in the way of insurance protection and not at what was actually paid for that protection.

In essence this is what the Commissioner argues. He says that the transfer was of more than the net cash outlay made to pay the premiums. His argument goes that decedent had participated in purchasing life insurance protection on her own life for the benefit of her children by paying part of the premiums in contemplation of death which then ripened into insurance proceeds by reason of her death, and that the date on which the transferred property is to be valued is her death date and not when the premiums were in fact paid. Accordingly, the Commissioner would include in decedent's estate, not all, but the proportionate part of the proceeds which decedent's premium payments had purchased. This method of valuation, though in a different factual situation, was approved in *Liebmann* v. *Hassett*, 148 F. 2d 247. And see discussion in *Scott* v. *Commissioner*, 374 F. 2d 154, reversing 43 T.C. 920.

The action taken by the Commissioner in including the insurance proceeds in the mother's estate is supported by the following excerpt from *Chase Nat. Bank* v. *United States*, 278 U.S. 327, 337:

Obviously, the word "transfer" in the statute, or the privilege which may constitutionally be taxed, cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must, we think, at least include the transfer of property procured through expenditures by the decedent with the purpose, *effected at his death*, of having it pass to another. Sec. 402(c) taxes transfers made in contemplation of death. It would not, we assume, be seriously argued that its provisions could

---

[5] We need not and do not reach respondent's alternative contention, that if some amount is allowable under sec. 2053, it is limited to the present value, rather than the full amount, of the $36,000. See *Schoenfeld* v. *Commissioner*, 103 F. 2d 964, 967 (C.A. 9, 1939). Compare *Gertrude H. Blackburn*, 20 T.C. 204 (1953); *Estate of Pompeo M. Maresi*, 6 T.C. 582 (1946), affd. 156 F. 2d 929 (C.A. 2, 1946).

be evaded by the purchase by a decedent from a third person of property, a savings bank book for example, and its delivery by the seller directly to the intended beneficiary on the purchaser's death, *or that the measure of the tax would be the cost and not the value or proceeds at the time of death.* [Emphasis supplied.]

In other words, the transfer here is not to be measured or valued by the cash premiums paid, but by the insurance purchased with those premiums. The cash itself was never transferred as such to the children. It purchased insurance which is what she intended for her children to receive on her death and which they did receive.

I would sustain the Commissioner.

RAUM, DAWSON, and SIMPSON, *JJ.*, agree with this dissent.

---

RAUM, *J.*, dissenting: If the decedent, in contemplation of death, had purchased a parcel of real estate for her children, I think there would be no doubt that the value of that property as of the time of her death, rather than the purchase price, would be includable in her gross estate under section 2035. Similarly, if she had paid only part of the purchase price in contemplation of death, the proportionate value of the property at the time of her death would be includable in her gross estate. And when all the smoke has cleared away here, that is all that remains in this case. Life insurance, like any other property, may be the subject of a gift in contemplation of death. Whatever conclusory terms or euphemisms may be used to describe the transaction,[1] the decedent in fact purchased the life insurance for her children, and to the extent that the purchase price was paid in contemplation of death the value of what was purchased, determined as of the date of death, is properly to be included in the measure of her gross estate.

Nor should the provisions of section 2042 relating to the inclusion of life insurance proceeds in the gross estate confuse the issue. This is not a section 2042 case; rather, this is a section 2035 case relating to contemplation of death. Section 2042 provides for the inclusion of life insurance proceeds in certain specified circumstances, none of them requiring contemplation of death. Section 2035, on the other hand, deals exclusively with transfers of *all* property in contemplation of death, and it is not disputed that such transfers may include life insurance. Here, the existence of a contemplation-of-death motive is con-

---

[1] Of course, the conclusory language in the stipulation that the children "purchased" the policy on the decedent's life must be read in the light of the underlying facts, namely, that the decedent paid for the policy in its entirety and obviously played the crucial role in obtaining it by subjecting herself to physical examination and otherwise. What the word "purchased" was intended to mean in the stipulation is anyone's guess, but it certainly cannot be used as a magic formula to contradict what is otherwise plainly apparent in the record. When considered in the light of all generally understood meanings of the word "purchased", it was the decedent, and not her children, who in fact "purchased" this policy.

928

ceded. The only question is the amount to be included in the gross estate, and section 2035 provides the answer with unambiguous clarity.

TIETJENS, DAWSON, and SIMPSON, *JJ*., agree with this dissent.

---

DAWSON, *J.*, dissenting: I agree with the dissenting opinions of Judges Tietjens and Raum, but I would like to add the following comments and observations.

It seems to me that the majority opinion fans the flickering flame of form. The legal and economic substance is indeed interred. Too much emphasis is placed on formalities. Certainly the decedent had an "interest" in the insurance policy on her life. Granted that her children were the "record owners and beneficiaries," it was the decedent who *actually purchased* the policy. It was she who agreed to have the insurance placed on her life, submitted to the required physical examination to determine her insurability, and paid the consideration creating the property interest, the value of which is includable in her gross estate. Her premium payments constituted the only consideration ever paid for all the insurance coverage under this policy.

As Judge Tietjens has indicated and as Judge Raum has clearly illustrated, the majority has failed to grasp the significance of the broad legal principle, which had its origin in *Chase National Bank* v. *United States*, 278 U.S. 327 (1929), that the word "transfer" in the early predecessor of section 2035 is not restricted to the passing of particular items of property directly from the decedent to the transferee, but includes transfers "procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another." What could possibly be the effect of the premium payments other than to procure for the beneficiaries (donees) the benefits of the full face amount of the insurance policy? Plainly, the decedent's payment of premiums enabled the beneficiaries to receive the proceeds of the policy because the premiums had to be paid to keep the policy in force so that the directions contained in the insurance contract as to payment of the proceeds would be operative. The functioning of the insurance contract provisions is merely incidental and complementary to the actual creation of the proceeds by virtue of the premium payments. As I view this situation of life insurance premiums and the protection they afford, the amount of the proceeds made available at death is, in reality, the quantum of property which has been created and transferred by reason of the expenditures for premiums and not just the premiums themselves. Therefore, I disagree with the majority that all the "decedent parted with" or "the only thing diverted from her estate" was the "money" paid as premiums in contemplation of death. The substance is otherwise.

TIETJENS, RAUM, and SIMPSON, *JJ*., agree with this dissent.